## NICHOLS *vs.* THE CITY OF BRIDGEPORT.

Where, in an action against a city, the declaration contained a count for the value of the plaintiff's land, taken and appropriated, by the defendants, for a public street, or highway, under the provisions of their charter, one of which provisions required compensation to be made to the owner of the land taken, and the question was, whether the proceedings of the city authorities, in such taking were, or were not, void; it was held, that there could be no recovery under such count.

An act of the legislature, incorporating a city, " with power to lay out new highways, streets, public walks, public avenues, and public landing places in said city, and to ascertain what person, or persons, owning or interested in land or buildings in said city, will be specially benefitted by such lay-out, alteration, or designation, and to apportion among, and to assess to be paid by, such person or persons respectively, the whole, or such part as they shall judge reasonable, of the damages caused by such alteration or designation," is a constitutional and valid act.

In estimating the damages which a party sustains, by the taking of his land, for one of the improvements provided for in said charter, the local benefit derived thereby may be considered, and deducted from the damage occasioned by such taking, and where such benefit equals, or exceeds the value of the land, the owner sustains no damage, and none can be allowed him.

To render an assessment of a benefit, under such charter, legal, it must be regularly ascertained that the party assessed is benefitted, by the improvement for which he is assessed, to the precise extent of such assessment beyond the ordinary benefit, which, as one of the community, he receives from said improvement.

Such assessment is an exercise of the power of taxation, vested in the state government, and is not in conflict with any provision of the constitution of this state.

The clause of the constitution, which provides that the property of no person shall be taken for public use, without just compensation therefor, has respect to property taken, by right of eminent domain, and has no reference to the collection of taxes.

The thirty-eighth section of the charter of the city of B, after prescribing the mode of laying out public streets, provided that the damages caused by such laying out, unless the court of common council could agree with the parties injured, should be estimated by three judicious freeholders of said city, and was silent in respect to the assessment of benefits derived therefrom. But a subsequent section provided that the common council of said city might ascertain, and assess to be paid, by the person, or persons, benefitted, the whole, or such part of said damages as they should judge reasonable,

Nichols *v.* Bridgeport.

without prescribing the mode of such assessment. Appraisers having been appointed to estimate the damages to the proprietors of lands, in consequence of laying out, and extending, a public street in said city, reported that no damage was sustained by the plaintiff, by reason thereof. But it did not appear, upon the face of the proceedings, that such appraisers were free-holders, or were inhabitants of said city. The common council subsequently appointed a committee, to make assessments of benefits to proprietors, by the laying out of such street, who reported that the plaintiff was benefitted thereby to the amount of $———— ; from which report the plaintiff appealed, under another provision of said charter, to a judge of the superior court, by whom a committee of freeholders were appointed, who reassessed the plaintiff's benefit, at the same sum, and which the defendants collected of the plaintiff. In an action against said city, to recover the amount so collected of him, it was held; 1. That, in ascertaining the intention of the legislature, in relation to the taking of private property, for public purposes, specified in said charter, all the sections thereof must be taken together. 2. That a regular finding, by a competent board, under the charter, that the plaintiff had not been damaged by such laying out, was involved in the finding by the committee, appointed to reassess said benefits. 3. That, although the rule is, that where there is an attempt to acquire a title to land, or to take, from a proprietor, his right to the unrestrained use of it, *in invi-tum*, and under the provisions of positive law, and in derogation [of the common law, every requisite of the statute must be complied with, and should appear on the face of the proceedings, under which the property is attempted to be taken, yet in this case, the defect in the appraisement of damages was cured by the subsequent proceedings, and therefore the plain-tiff was not entitled to recover.

Where the committee, appointed to lay out such street, reported that they were unable to agree with any of the parties whose land was taken ; it was held, that the assessment was not void, although it did not otherwise appear, that the common council had made any attempt to agree with the plaintiff.

Where such charter required notice to be given, to the party assessed, of the sum required to be paid by him, and the plaintiff, after he had been assessed, was notified of the amount of his assessment; it was held, that such pro-ceedings were not void, on the ground that no notice was given to him, beforehand, of the time when such assessment would be laid.

Nor were they void, because it did not appear that the committee who assessed such benefits were freeholders.

THIS was an action, brought by Jonathan Nichols against the city of Bridgeport.

The declaration embraced two counts. The first was the common count for money had and received. The second alleged, that "the defendants were indebted to the plaintiff,

in the sum of one thousand dollars for land of the plaintiff, situated in the city of Bridgeport, and before that time, taken and appropriated by the defendants, under the pretended provisions of their charter, for a public street, or highway, within the limits of said city. And being so indebted, the defendants afterwards, in consideration thereof, undertook, and faithfully promised the plaintiff to pay to him said last mentioned sum of money, when they should be thereunto afterwards requested."

The cause came on for trial, at the term of the superior court, for the county of Fairfield, holden in April, 1853, when the court found substantially the following facts, and reserved the questions thereon arising, for the advice of this court.

Before the commencement of said action, the plaintiff, by force of a warrant, isssued under the authority of said city, was compelled to pay, and did pay to the defendants, as an assessment for benefits received by the plaintiff, by the laying out of a certain street, being an extension of John street, the sum of six hundred dollars, and the further sum of $———, for costs and charges in collecting the same.

The following documentary evidence was presented by the defendants, and admitted on the trial. An order of the common council of the city of Bridgeport, passed May 4th, 1849, appointing a committee to lay out and extend John street; who, after laying out said street, reported that they were unable to agree with any of the parties whose land had been taken, as to the damages sustained by them.

Also the proceedings regarding the assessment of damages, which consisted of a copy of the appointment of the appraisers, the oath administered to them, and their report, in which, after appraising the damages sustained by two proprietors, they stated, that " no other person, or persons, have sustained damage by the extension and lay-out of said street." Said report was signed by their committee, under oath, but

it nowhere appeared, on the face of the proceedings, that they were freeholders or residents of the city of Bridgeport.

Also, a notice of the laying out of said street, and service of the same upon the plaintiff, and the proceedings of the common council, in laying out said street.

The application by the plaintiff to a judge of the superior court, for the reassessment of damages, and the proceedings thereon, from which it appeared that, upon such application, three disinterested freeholders of the county, were appointed, to reëstimate the damages sustained by the plaintiff, who found, that he had sustained no damage by the laying out of said street, and who made report of their finding, which was duly accepted.

The defendants also introduced the proceedings of the court of common council, in the assessment of benefits to the plaintiff and others; in the extension of said John street, consisting of the appointment of a committee for that purpose; and their report, in which it was found that the plaintiff's benefit was six hundred dollars; the acceptance of said report, and the certificate of the clerk of said common council, that notice of such assessment was given to the plaintiff. Also an application, by the plaintiff, to a judge of the superior court, for a reassessment of benefits, and the proceedings thereon, consisting of a citation to the plaintiff, the appointment of freeholders to reassess the plaintiff's benefit, their report, in which such benefit is reassessed at the same sum, *viz.*, six hundred dollars, and the acceptance of such report.

The defendants also introduced, in evidence, the charter of the city of Bridgeport; the only sections of which, material to the present case, are the following.

" SEC. 37.    The court of common council, of said city, shall have power, and authority, as they shall judge needful, to lay out new highways, streets, public walks, public avenues, and public landing-places in said city, and to alter, extend, or enlarge any highway, street, ·public walk, public avenue or public landing-place, in said city, and to discon-

tinue or exchange the same, for other highways, streets, public walks, public avenues, or public landing-places, in said city, and to make and cause to be executed all such orders relating thereto as they shall judge proper.

" Sec. 38. Whenever said court of common council shall determine to lay out, or to alter, extend, or enlarge any new highway, street, public walk, public avenue, or public landing-place in said city, they shall give reasonable notice to the owner, or owners of the land and buildings upon, over, or through which the same is to be laid out or altered, to be present, if they see cause, at the laying out, or altering the same; and such notice shall be in writing, signed by the mayor, or one of the aldermen of said city, and shall be given to the person entitled to receive it by reading the same in his presence and hearing, or by leaving a true and attested copy at his usual place of abode, by either of the sheriffs, or by some indifferent freeman of said city; and in case the owner of any such land, or building, shall not reside in this state, said notice shall be given to the occupant, or persons, having such care of such land, or building; and said court of common council may themselves, or by a committee by them appointed, make such lay-out or alteration, and may order the damages thereby sustained by any person, or persons, to be paid out of the treasury of said city, and unless said court of common council can agree with the person, or persons, injured by such lay-out or alteration, respecting the damages by him, or them sustained, such damages shall be estimated by three judicious, disinterested freeholders of said city, who shall be appointed and sworn by the mayor, or in his absence, by the senior alderman of said city, and a certificate thereof shall be made and recorded in the records of said city. And it shall be the duty of said freeholders, to make a return of their doings to the clerk of said city, who shall record the same. And a survey of such lay-out or alteration, with a particular description thereof, shall be made by the direction of said court of common council,

which, being accepted by the said court of common council, shall be signed by the mayor or senior alderman, and recorded in the records of said city; and said court of common council shall limit the time within which such highway, street, public walk, public avenue, or public landing-place, so laid out or altered, shall be opened; and at the expiration of the time so limited, may adopt all such measures, and may make, and cause to be executed, all such orders, as shall be necessary for appropriating the same to the purpose for which the same was laid out or altered. Provided, always, that no highway, street, public walk, public avenue, or public landing-place, so laid out or altered, shall be opened until the damages assessed shall be paid to the person, or persons, entitled to receive them, or deposited in the city treasury for his or their use.

" Sec. 39. The court of common council of said city, shall be, and they hereby are authorized, and empowered to designate a line, or lines, on the lands of any proprietor, or proprietors, adjoining every highway, street, public walk, or public avenue already laid out, or hereafter to be laid out in said city, between which line, and such highway, street, public walk, or public avenue, no building or part of a building, shall be erected, provided such lines shall not be more than eight feet distant from such highway, street, public walk, or public avenue.

" Sec. 40. When said court of common council shall so designate a line or lines on the lands of any such proprietor, or proprietors, they shall give to such proprietor or proprietors, reasonable notice to be present at the time such designation shall be made. And in making such designation, due regard shall be had to the general line of such highway, street, public walk, or public avenue. And a survey shall be made by direction of said court of common council, containing a particular description of such line, or lines, with the quantity of land on which the proprietor, or proprietors, are prohibited to build, which, being accepted by said court

Nichols *v.* Bridgeport.

of common council, shall be signed by the mayor or senior alderman, and recorded in the records of said city. And the damages done to such proprietor, or proprietors, by such designation, shall be estimated by three judicious, disinterested freeholders of said city, who shall be appointed and sworn by the mayor, or in his absence, by the senior alderman of said city, and a certificate thereof, shall be made and recorded in the records of said city. And it shall be the duty of said freeholders, to make return of their doings to the clerk of said city, who shall record the same.

" Sec. 41. Whenever any highway, street, public walk, public avenue or landing-place in said city shall be laid out or altered, or whenever any line shall be designated upon the land of any proprietor, between which and any highway, street, public walk, or public avenue in said city, such proprietor shall be prohibited to build, said court of common council shall have power, and it shall be their duty, to ascertain what person or persons, owning or interested in lands or buildings in said city, will be specially benefitted by such lay-out, alteration, or designation, and to apportion among, and to assess to be paid by such person or persons respectively, the whole, or such part as they shall judge reasonable, of the damages caused by such lay-out, alteration, or designation. And said court of common council shall thereupon give notice to such person or persons of the sums assessed, to be by them respectively paid, and shall order the same to be by them respectively paid, to such person or persons as shall by. said court of common council be authorized to receive the same, for the purpose of paying such damages; and they shall appoint a collector, to whom the mayor or one of the aldermen of said city shall issue a warrant of distress, authorizing him to collect of such person or persons, the sums by them respectively ordered to be paid, as aforesaid.

" Sec. 42. All persons aggrieved by the estimate by freeholders of damages occasioned by any lay-out, alteration, or designation of lines made according to the provisions of this

act, and all persons aggrieved by the assessments by them respectively ordered to be paid, according to the provisions of this act, may, within six days after notice of such estimate or assessment, apply, by petition, to any judge of the superior court for a reëstimate of such damages, or a reassessment of the sums by them ordered to be paid, giving reasonable notice, in writing, to the clerk of said city, of the time and place when, and where, and the judge to whom, such application will be made. And said judge shall appoint three judicious, disinterested freeholders of the county of Fairfield, to reëstimate said damages, or reassess the sums ordered to be paid as aforesaid; and said freeholders shall reëstimate said damages, or reassess the sums ordered to be paid, as aforesaid, under oath, and make report of their doings to said judge, who shall have authority, for any cause which he shall judge sufficient, to set aside such report, to correct the same, to order another estimate or assessment to be made, or to make such order thereon as to justice shall appertain. If upon any such application for reëstimate of damages, said damages shall be increased by said freeholders, the costs of such application shall be paid by said city; but if they shall not be increased, they shall be paid by such applicant."

It was admitted, that said extension of John street, was opened and used by the public before the commencement of the plaintiff's suit, and that a portion of said extension was laid out over land of the plaintiff; that the plaintiff's land was taken for said street and that no damage was assessed or paid to the plaintiff for the same; that aside from any benefits by him as owner of land adjoining said street derived from the laying out of the same, the plaintiff sustained damage by the taking of his said land for said street, to the amount of $———. It was insisted by the plaintiff that these proceedings were insufficient to show a legal laying out of said street across his land, and a legal assessment of said benefits to him, and in laying out, establishing

and opening said street, did not authorize the defendants to demand, and in manner aforesaid, to enforce the payment of and receive the amount so assessed and said costs and charges from the plaintiff, and that, therefore, the defendants were liable for said money so collected and received as for money had and received by the defendants to the use of the plaintiff. The defendants claimed that said proceedings did authorize them to collect said money from the plaintiff, and that they were not liable for money had and received to his use.

The question whether on these facts, the plaintiff was entitled to recover, was reserved for the advice of this court.

*Hawley,* for the plaintiff, contended,

1. That the clause of the defendants' charter, authorizing assessments for benefits, is void, because it takes property without compensation, and is opposed to the constitution of this state. Art. 1, sec. 1 and sec. 11. It is in direct conflict with the principle that one citizen, while equal to others in rights, shall be equally, and only equally, subjected to public burdens. No one can properly be compelled to pay for a public benefit, but in proportion to the benefit he in common with the rest of the community, receives, therefrom. No man's property is liable to be wrested from him for a public benefit, without any compensation, while he, in addition, is compelled to pay largely for that benefit, and then not as his portion of a tax, levied on the public, but independently of any public assessment. It is not in the power of our government to force a supposed, or real, benefit on one, and then compel him to pay for it, nor to lay out a highway, for the purpose of conferring a benefit on an adjoining proprietor of land, especially if he does not ask it.

2. That the proceedings, in regard to damages and benefits, were irregular, and rendered all the proceedings void. It does not appear that the committee, appointed to assess the damages, were freeholders, or even that they belonged to the city.

3. That damages should have been awarded to the plaintiff, by the freeholders, it being agreed that his land was valuable, and that he sustained damages, aside from the benefits derived. *Jacob* v. *Louisville*, 9 Dana, 114. *Sutton* v. *Louisville*, 5 Dana, 28. *Rice* v. *Turnpike Co.*, 7 Dana, 81.

4. That the freeholders had nothing to do with benefits, and had no right to take them at all into consideration. The assessment of benefits belonged to the common council, exclusively, these two bodies being entirely distinct, acting independently of each other, and neither could consider, at all, matters within the functions of the other.

5. That the record shows no notice to the plaintiff and others, to be present at the laying out of the street. The report of the committee, stating that they gave the requisite notice, does not show what notice was given.

6. That it does not appear that any effort was made, by the common council, to agree with the parties as to damages. The committee, indeed, say that they could not agree, &c.; but this was no part of their duty, nor within their power.

7. That the plaintiff had no notice to be present at the assessment of benefits, nor at the meeting at which the assessments were established. There was no order to pay on any of those charged with benefits, but the plaintiff, and the warrant was improperly issued against him alone. The damages were, as they might be, ordered to be paid out of the public treasury: they could not then be charged, in the way of benefits, or individuals.

*Dutton* and *Loomis*, for the defendants, contended,

1. That compensation for land taken for public purposes, may be made in benefits conferred. Matter of 26th Street, 12 Wend., 203. *Livingston* v. *Mayor of New York*, 8 Wend., 101. *Livermore* v. *Town of Jamaica*, 23 Verm., 361.

2. That the defendants' charter is constitutional, and the proceedings are legal. The only question for the committee to decide on the laying out said street, was, whether there

were damages to the plaintiff.  *Griffin* v. *Mayor of Brooklyn*, 4 Coms., 420.  *Bradshaw* v. *Rogers*, 20 Johns., 105.  *Gardner* v. *Newburgh*, 2 Johns. Ch., 160.  *M'Masters* v. *Cincinnati*, 3 Watts, 292.  *Alexander* v. *Mayor of Baltimore*, 5 Gill., 383.  *Brown* v. *Cincinnati*, 14 Ohio, 541.  *M'Intyre* v. *Slate*, 3 Black., 384.

3. That they adopted the only rule they could adopt, without violating their oaths.

4. That this rule is in conformity with all the decisions made in this state.  *Windsor* v. *Field*, 1 Conn. R., 279. *Nicholson* v. *N. Y. & N. H. R. R. Co.*, 22 Conn. R., 88. *Bridgeport* v. *Housatonic R. R. Co.*, 15 Conn. R., 501.

HINMAN, J.   The declaration contains a count for money had and received by the defendants for the plaintiff's use, and also a count for the value of the land, taken and appropriated by the defendants, under the provisions of their charter, for a public street, or highway, within the limits of the city.   The right of the plaintiff to recover, upon the second count, has not, however, been pressed, and as plaintiff's argument rests upon the claim that the land of the plaintiff has not, in point of law, been taken, on the ground that the proceedings are all void, we presume the claim upon this count was intended to be abandoned.   It seems, therefore, to be sufficient to say, in reference to it, that, if the proceedings of the city authorities are void, the plaintiff's land has not been taken, and he can have no right to recover for it, as if it had been, and if the proceedings are not void, or, at least, inoperative, so far as the plaintiff's rights are concerned, it must be because his land has been legally appropriated to the public use, as one of the legally constituted streets of the city; and, as this could not be accomplished, without first making just compensation for the land taken, it follows, as of necessity, that such compensation must have been made; and, in no event, therefore, can the plaintiff recover upon this second count.

Can he recover upon the money count? If the proceedings of the city authorities are void, or inoperative, in respect to the plaintiff's rights, it follows, that he can recover the amount of money, which he has been compelled to pay the city collector, on the warrant of alderman Burrall; but, if they were all valid proceedings, then the money was due to the city, and the plaintiff's claim to recover it, fails. The plaintiff has had nothing paid to him for his land, taken by the extension of John street, but has been compelled to pay and has paid the sum of six hundred dollars, as an assessment for benefits, received by him, in respect to his land not taken by the extension of said street; and the claim first made is, that this assessment of benefits, whether made as a compensation for his land taken, or otherwise, is illegal and void, on the ground that it is an attempt to take private property for public use, within the familiar constitutional provision that such property shall not be taken for such use, without just compensation being made therefor; and this is the question we have first to consider.

The charter of the city of Bridgeport authorizes such an assessment of benefits to be made. That portion of the charter, which relates to the subject, will be found in the thirty-eighth and forty-second, and the intermediate sections; and it is proper here to remark that we do not assent to a claim made by the plaintiff's counsel, as to the proper manner of looking at these sections, for the purpose of giving a construction to them. It seemed to be assumed that we were to look at these several sections, independently of each other, as if they were each treating of a single, separate, distinct and several matter, and as having no relation to each other; whereas, as we look at them, they all relate to the same general subject, *viz.*, the laying out, or altering, extending or enlarging of any new highway, street, public walk, public avenue, or public landing place in the city; also, the establishment of lines on the lands of proprietors, adjoining the streets and public avenues, between which and the

streets, or public avenues, the proprietors are prohibited from erecting buildings, and the making of compensation to persons injured by these improvements, either in respect to the taking of these lands or the establishment of lines for building, and the assessment of benefits to the owners of lands, or buildings benefitted thereby, for the purpose of raising the means with which to make such compensation. The importance of this, however, will be made more apparent, when we come to consider the legality of the assessment in this case, in point of form. We are now only upon the constitutionality of the assessment of benefits, without respect to the point whether the proper course was taken in this particular case.

The forty-first section provides that "whenever any highway, street, public walk, public avenue or landing place in said city shall be laid out or altered, or whenever any line shall be designated upon the land of any proprietor, between which and any highway, street, public walk, or public avenue in said city, such proprietor shall be prohibited to build, said court of common council shall have power, and it shall be their duty to ascertain what person or persons, owning or interested in lands or buildings in said city, will be specially benefitted by such lay-out, alteration or designation, and to apportion among, and to assess to be paid by such person or persons respectively, the whole, or such part as they shall judge reasonable, of the damages caused by such lay-out, alteration, or designation," and then the section goes on to provide how the benefits thus assessed shall be collected.

In the case of *Nicholson* v. *The New York & New Haven Railroad Co.*, 22 Conn. R., 174, the superior court instructed the jury that, in estimating the damages caused to the plaintiff's property, by the defendants' making an embankment on his land, in one of the streets of New Haven, to such an extent as to make it necessary for him to raise up his buildings from their original foundations, to enable him to gain access to them, which embankment was rendered necessary

in consequence of the construction of the defendants' rail-
road, the jury should allow the defendants the local, personal,
and particular advantage, accruing to the plaintiff's premises
from the construction and use of the road; and this court
were unanimously of opinion that that instruction was cor-
rect.    The point then arose upon the words of the charter
of the New York and New Haven railroad, which allowed
to persons, whose real estate was taken, or injured, just
damages; and it was said, in that case, that the practice of
selectmen and county commissioners, in laying out ordinary
highways under the statute, was to consider the local and
peculiar benefit which a proprietor whose land is taken,
receives by the new highway, in respect to his land not taken,
but which is contiguous to the road.    22 Conn. R., 88.
This decision is a full and perfect answer to so much of the
plaintiff's argument, as rests upon the idea that, because some
portion of his land was taken, by the extension of John
street, therefore, he must have sustained damage thereby.
It is obvious, that in point of fact, the plaintiff's land might
be so situated, as to be greatly benefitted by the opening of
the new street through it; and while it is true that there is
no power, and ought to be none in the government, to thrust
a benefit on an individual, and then compel him to pay for
it, as a mere abstract proposition, yet we think it would be
a perversion of the constitutional provision, in respect to
compensation for property taken for public use, to hold, that
the government must, in all cases, pay for the property taken,
irrespective of the local and peculiar benefit which the party
receives thereby.    While it is unjust that property should be
taken for public use without compensation, it is equally so,
that any individual should be paid for a benefit he has
received by a public improvement, whether it is thrust upon
him or not.    Public improvements are not made at the call
of any single individual, nor are they denied, because one or
more individuals, whatever may be their interest in regard to
them, may feel aggrieved by them; but they are made,

because the public require and need them; and when so required, individuals, who are very much benefitted by them, ought, surely, to rest satisfied with them, without tenaciously insisting upon compensation for these benefits. These principles are fully sustained by numerous decisions in Massachusetts, New York, and elsewhere. *Owners of ground* v. *Mayor of Albany*, 15 Wend., 374. *Commonwealth* v. *Justices of Norfolk*, 5 Mass., 430. *Commonwealth* v. *Cony*, 2 Mass., 489. *White* v. *County Commissioners of Norfolk*, 2 Cush., 361.

But the plaintiff has not only been denied compensation for his land, taken by the extension of John street, but he has been assessed, and compelled to pay the sum of six hundred dollars, as for a benefit he has received by the extension. This assessment, we have seen, is authorized by the forty-first section of the charter of Bridgeport, but it is claimed that this section of the charter is unconstitutional and void. Provisions of a similar character to this are contained, we believe, in most, if not all, the city charters in the state, either in respect to the laying out or improvement of streets, or in respect to public parks, side-walks and sewers, and probably for many other city purposes; and these provisions, to a greater or less extent, have been acted upon, ever since the organization of cities in the state, and although questions, in respect to the exercise of this power, have frequently arisen in the courts, yet the constitutionality of the power itself has not, so far as we are advised, been seriously questioned before; certainly, it has not been so questioned in our highest courts. Surely, the long acquiescence of the community, in the exercise of this important power, and the repeated sanction of it by the legislature, in chartering our cities, ought to be some evidence of the legality of it. It is difficult to believe that a doubtful power of this sort, would be long submitted to, without question. But we agree that this is not conclusive upon it, however persuasive it may be. But what objection is there to the exertion of such a power?

It is said that it takes the property of individuals; that is, their money, for public use, without any compensation therefor. This is not so, either in theory, or in fact. If the assessment has been truly and justly made, the fact must be regularly ascertained to be, what the theory of the proceeding supposes it to be, *viz.*, that the party whose money is taken, is locally and peculiarly benefitted, over and beyond the ordinary benefit which, as one of the community, he receives in all public improvements, to the precise extent of the assessment. It is no answer to this, to say that the power may be abused; that is true of every power, and whether this particular power is so liable to be abused, as to make it improper that it should be vested in the city corporations, is a matter of which the legislature must be the sole judge. The legislature saw fit to authorize the city authorities to lay out new streets, and public avenues, and instead of throwing the expense on the whole city, to be raised by a general tax, it authorizes the expense of the several new improvements to be assessed upon those, who, " owning or interested in lands, or buildings in said city, will be specially benefitted by such lay-out, alteration or designation, and to apportion among, and to assess to be paid, by such person or persons respectively, the whole, or such part as they shall judge reasonable, of the damages caused by such lay-out, alteration or designation." Now, unless there is some inherent difficulty in ascertaining who are the persons thus specially benefitted, we see no more objection to this mode of taxation for a public improvement, than there is in all other modes. From the very nature of the subject, the power of taxation is an arbitrary power, which, when exercised by the government itself, is limited only by the discretion of the legislature, and when exercised by subordinate bodies, is limited by the objects for which the legislature has seen fit to authorize it to be exercised, and by such restrictions as the legislature has seen fit to prescribe, unless, indeed, it is further limited by some constitutional provision.

But the only provision that can be found, at all bearing upon this subject, in our constitution, is the one already alluded to, that " the property of no person shall be taken for public use, without just compensation therefor, and this has respect to property taken by the right of eminent domain, as where the land itself is taken for a highway or other public work, or where property is directly taken for the use of the government, and has no reference to the collection of taxes where money is taken as the contributive shares of individuals to the public burdens. The rule of taxation authorized by the charter, and which, in this particular case, the authorities of Bridgeport adopted, is certainly as equitable as any other. It attempts to apportion each man's tax to the benefit which he is to receive from the improvement, for which it is expended. Most of our highways are laid out by the selectmen of the towns, and the expense is borne by the town in which the highway is located, though in regard to many of them, the inhabitants of the towns have a much less interest than the public, beyond the local limits of the town; and in regard to many others, they are principally for the accommodation of some, perhaps a small portion of the town's inhabitants. But the towns bear the burden, because the legislature has thrown it upon them. It might, with the same propriety, have thrown it upon the counties, or even upon the lesser territorial corporations, and although injustice may occasionally be done, by compelling a small town to construct an expensive bridge, for the benefit principally of persons outside of its limits, yet the general operation of the law is, perhaps, as equitable as any system which could be devised. At any rate, we have never heard it agitated, as a debatable point, that the system was so unjust as to be unconstitutional or illegal.

We think the views, which we have here expressed, may fairly be drawn from the class of cases already cited, in which it has been held, that the local and peculiar benefit which a party receives by the laying out of a highway, or other

like public improvement, through a portion of his land, may be considered and deducted from the damage he has received, by the taking of another portion of his land, for the purpose of making the improvement itself. If you can deduct the benefit from the value of the land taken, then it follows, that where the benefit exceeds the value of the land, the property has sustained no damage, and nothing can be allowed him for his land, which has been taken for public use. See 2 Cush., 361. But, as the constitution is imperative, that private property cannot be taken without just compensation being made therefor, it follows, that the estimated benefits must be considered, and treated as the compensation for the land taken, and the only compensation to which the party is entitled. This, however, is, in effect, but one way of taxing an individual, peculiarly benefitted by the laying out of a highway, for a portion, and it may be only a portion, of his just share of the whole tax, for the public improvement. If you can, in this way, tax one individual for the whole, or a part of his share of the public burden, it seems to follow, that you can, for the same reason, and on the same ground, *viz.*, the special and peculiar benefit he has received, or is to receive by the improvement, tax every other individual who is similarly situated. And if you can tax him to the extent of the full value of the land actually taken, there is no reason that will limit the tax to that precise amount, or to any amount, short of the full value of the benefit he receives, provided all others, similarly situated, are taxed proportionably.

But the point we are now considering, although it has never before come up for consideration in this court, is not a new one to the profession; and it has very lately received the careful examination of the court of appeals, in New York, which, upon full argument, and in view of all the authorities, which could be brought to bear upon the question, came unanimously to the conclusion, that where a statute " authorizes a municipal corporation to grade and improve streets,

and to assess the expense among the owners and occupants of land, benefitted by the improvement, in proportion to the amount of such benefit," it is a constitutional law; that such an assessment is an exercise of the power of taxation, vested in the state government, and is not in conflict with any provision of the constitution. *The People ex rel. Griffin* v. *The Mayor, &c., of Brooklyn,* 4 Comstock, 419.

As the constitution of New York, in relation to every point, which can be supposed to have any bearing upon this question, does not differ, in any essential particular, from our own constitution, this decision of that learned court, so lately made, ought to have a controlling influence, upon the question, if we had doubt in relation to it, on the ground of principle; especially, in the absence of any well considered case to the contrary; for we think, it is shown, in the opinion expressed in this case, that the contrary doctrine, which at one time, seemed to prevail, in Kentucky, cannot now be considered, as the law of that state. See the cases decided in Kentucky, referred to by Judge Ruggles, in 4 Comstock, 429.

But objections are made to the regularity of the proceedings, resulting in the assessment of benefits.

In the first place, it is insisted, that, as it appears the plaintiff's land was valuable, damages should have been allowed him, as a matter of right.

This objection, has been incidentally answered already. Aside from the question of benefits, he was undoubtedly entitled to damages; but, if we are correct, in what has been said, then he was only entitled to the excess of damage, over his local and peculiar benefits; and, if there is no such excess, then he has suffered no damage, within the meaning of the constitutional provisions, requiring property, taken for public use, to be compensated for; for the reason, that he has obtained compensation, in the increased value to him, of his adjoining land, not taken for such use.

The plaintiff further claims, that the freeholders to assess

damage, under the 38th section of the charter of Bridgeport, are, by the terms of the charter, appointed for the mere purpose of assessing damage, irrespective of any benefits; and that a different body, the common council, must ascertain, assess, and apportion the benefits. And in connexion with this, it is claimed, that the record does not show, that the persons appointed to assess damages, were freeholders, or residents of the city.

Some portion of this claim is well founded, undoubtedly. The appointment of appraisers, to estimate the damages to proprietors, caused by the laying out and extension of John street does not show, that the persons appointed, were either freeholders, or residents of Bridgeport; and although the warrant, for the collection of the assessment, against the plaintiff, which professes to give a history of all the proceedings, does state, that those persons, were in fact, freeholders of the city, yet we cannot think this is proper evidence of the fact. This fact can no more be shown by a statement in the warrant, than a judgment can be shown, by a statement in an execution, or by parol testimony, which no one would claim to be proper.

The rule undoubtedly is, that where it is attempted to acquire title to land, or to take from a proprietor his right to the unrestrained use of it, *in invitum*, and under the provisions of positive law, and in derogation of the common law, every requisite of the statute must be complied with, and should appear on the face of the proceedings, under which the property is attempted to be taken. *Mitchell* v. *Kirtland*, 7 Conn. R., 229. *Hobart* v. *Frisbie, &c.*, 5 Conn. R., 592. *Booth* v. *Booth*, 7 Conn. R., 350.

And where it becomes necessary, for a party to show a fact like this, the due appointment of certain officers to make an appraisal, it should be shown by the record, unless it appears the record is lost, in which event, secondary evidence of its contents may be proved. *Griffin* v. *Rising*, 2 Cush., 75. Nor can we sanction the defendants' claim, that,

by his appeal to a judge of the superior court, or his hearing before freeholders appointed by the judge, the plaintiff waived the irregularity. It appears to us, that the fact, that the persons whom the mayor was bound to appoint appraisers, to assess damages to persons, whose lands were taken for public use, were to be freeholders of the city, was a jurisdictional fact, which could only be shown, by the appointment itself, or the record of it; and if the appraisers appointed in this case, had no jurisdiction, and no power to make any appraisal, because it did not appear that they were freeholders of the city, then it seems, the appraisal they did make, was void, and there was nothing to appeal from.

If we looked at the several sections of the charter of Bridgeport, as entirely separate and distinct from each other, as the plaintiff views them, we should have great difficulty in coming to any other result, than that the attempted appraisal of damages to the plaintiff, having failed, in consequence of the appraisers not being freeholders of the city, the whole proceedings must be void also; and such would be the result, if they rested upon the legality of the appraisal under the thirty-eighth section of the charter. We have suggested, however, that we do not so look, at the charter. The object must be to come at the intention of the legislature; and to do this, we take all the sections, bearing upon the general subject of taking property for public use, together; and the whole, as connected with certain provisions, directing, and prescribing, the means of making compensation therefor. And, in view of the subsequent proceedings, which have been had in this case, it appears to us, that the difficulty, which has been suggested, has been cured by those proceedings.

The thirty-eighth section of the charter prescribes the mode of laying out streets, and provides for the assessment of damages caused thereby. The section is silent in respect to the assessment of benefits; but this court held, in a late case, that similar provisions in a railroad charter, necessarily

meant, by the word damages, the real, actual injury, over and above the special and peculiar benefit which the land owner received by the improvement. The committee of freeholders, then, in order to estimate correctly the real injury, must examine into the benefits, so far as to see whether they equal the damages, and if they do not, they must necessarily enquire what the benefits are, in order to deduct them from the damages; but when it is once found that the benefits equal, or exceed the damages, their powers are at an end, and they can only return, that the party whose land has been taken, has suffered no damage, as they are not appointed to assess anything but damages.

This has been understood to be the law, by all parties, throughout these proceedings. Hence, no damages have been assessed by anybody to the plaintiff, while damages were assessed to all others, who were differently situated. The committee, appointed by the mayor, after assessing the damages of all persons, whom they found to have been injured, close their report by saying, that no other persons have sustained damage by the extension of John street, and the committee appointed by the judge of the superior court, on the plaintiff's appeal, say expressly, that the said David B. Nichols has sustained no damage; and although these proceedings were void for the reasons suggested, they show clearly how all parties have construed this section of the charter.

The forty-first section of the charter, provides for the assessment of benefits, by the court of common council; and on the 15th of July, 1850, that body appointed a committee to make an assessment of the benefits to proprietors, by the extension of John street. On the 22d of July, the committee report a list of individuals benefitted by the exten- sion, and among them is the plaintiff, who is assessed, and set in the list, as benefitted to the amount of six hundred dollars. This report was accepted; the plaintiff was noti- fied of it, and he appealed to a judge of the superior court

for a review, and a disinterested committee of freeholders of the county, appointed by the judge, after a full hearing, reassessed the plaintiff's benefits, by the extension of this street, at the same sum of six hundred dollars.

The plaintiff claims that this assessment was also void. He insists, that no assessment of benefits can be made, until it has been, in some way, regularly determined that no injury or damage has been suffered; and that this can only be done by a valid finding, under the thirty-eighth section of the charter: we think otherwise.  If the appointment of appraisers of damages, by the mayor, had shown, that the persons appointed, were freeholders of the city, it would have regularly appeared, from their report, that the plaintiff had suffered no damage; but still they would have had no power to assess benefits, and it would have been necessary to have had an assessment under the forty-first section; and the common council, or their committee, under that section, must necessarily take into consideration the damage to the plaintiff, so far as to see that it did not amount to, or exceed the benefits; otherwise, there could be no benefits to ascertain and assess.  As the appraisers of damage could only appraise the real damage, or the excess over the benefits, so the assessors of benefits could only assess the excess over the damages: and we do not see why a regular finding, by a competent board, under the charter, that the plaintiff has not been damaged by the extension of John street, is not necessarily involved in the finding, that he has been benefitted thereby, to the extent of six hundred dollars.

It was said, that the legislature never intended to constitute two boards, having jurisdiction over the same subject matter.  But, to the limited extent which we have indicated, it appears to us otherwise.  These two boards are so constituted, that it is not possible for their decisions to conflict. If the first committee find no excess of injury, they have nothing to appraise; and if the common council find no excess of benefit, they have nothing to assess; and as the

assessment of benefits is in the nature of a tax, there seems no impropriety in its being vested in the board which has jurisdiction over the mode of taxation where taxes are levied by the city. Besides, the legislature has made such provision on the subject as it thought proper, and we have nothing to do with the mere question, whether the mode prescribed is the most convenient that could be devised.

It was said, that it does not appear that the common council made any attempt to agree, in respect to the plaintiff's damage. But the committee, who laid out the street, report to that board, that they were unable to agree with any of the parties whose lands were taken; and this report was accepted. We think this sufficient, until something is shown to the contrary.

Again, it was objected, that no notice was given of the time when the committee of the common council assessed the benefits. The duties of this committee were analogous to the duties of town assessors; and there was no more necessity of their giving notice, than in the case of ordinary assessors of taxes; the charter does not require them to do so. After the assessment was made, they gave notice to Mr. Nichols, and he then exercised his right of appeal to freeholders appointed by a judge of the superior court; and before the board to which he appealed, he had a full and fair hearing, which resulted in a reassessment of the same sum, that had been assessed by the committee.

What is meant by the claim, that the benefits were not properly apportioned, we do not know. The committee reported a list of persons owning lands, &c., who were specially benefitted, by the extension of the street, with the amount to which each was benefitted. We do not see what more could be done by way of apportionment.

Again, it is claimed, that the order to pay, and the warrant to collect the assessment, issued against the plaintiff alone. There is nothing to show the reason of this, or that there was any impropriety in it. If the others paid their assess-

ments, without the necessity of resorting to any compulsory measures, we do not think that the plaintiff ought to complain of it.

Another claim was, that the damages which other persons had suffered by the extension, were ordered to be paid out of the city treasury; and could not, for that reason, be afterwards claimed of the persons benefitted. We find no foundation for this, in the record before us; and, if the fact was so, we see no objection to it. The city might pay the damages, and then reimburse itself by the assessment and collection of the benefits, as well as to cause the benefits to be paid directly to the parties injured.

Lastly, it is insisted, that, as the committee to ascertain benefits do not appear to have been freeholders, their assessment was void. But the charter requires that the court of common council shall ascertain the benefits; and the mode of doing it is not prescribed. For convenience, a committee of the board was appointed, who made the assessments, and reported them to the board, and the report was accepted. It thus became the act of the court of common council, and there is no provision that that body shall be composed of freeholders.

Upon the whole case, therefore, we advise that judgment be rendered for the defendants.

In this opinion WAITE, J., and ELLSWORTH, J., concurred.

CHURCH, C. J., and STORRS, J., were of opinion, that, as it did not appear on the face of the proceedings, in laying out the street or highway, for the benefits of which the plaintiff was assessed, that the persons appointed to estimate, and who estimated the damages sustained by him by such lay-out, were freeholders of the city of Bridgeport, as was required by the thirty-eighth section of the charter, under which those proceedings took place, the said proceedings and laying out were ineffectual and void; and that this defect in the

proceedings was not cured by the subsequent proceedings; and that as the said street or highway was not legally established, the plaintiff was not liable, under the preceding section, to be assessed for benefits received by him by said laying out, and consequently, was entitled to recover the sum, collected of him, for such benefits.

Judgment for defendants.