THE STATE, THE NEW JERSEY RAILROAD AND TRANS-
PORTATION COMPANY, prosecutors, vs. THE MAYOR AND
COMMON COUNCIL OF THE CITY OF NEWARK.

1. By the charter of the city of Newark, the common council are au-
thorized to cause a just and equitable assessment of the damages and ex-
penses incident to the opening and widening of streets in said city to be
made among the owners and occupants of all the houses and lots intended
to be benefited thereby, in proportion to the advantages each shall be
deemed to acquire. An assessment made, under this provision of the city
charter, upon houses and lots owned by the New Jersey Railroad and
Transportation Company is not a tax or imposition upon the company
within the meaning of the exemption from taxation contained in the
eighteenth section of their act of incorporation.

2. By a supplement to the city charter, commissioners are authorized to

assess such portion of the damages and expenses of altering or widening a street used by the track of any railroad company, upon the corporation owning or using such track, as to the said commissioners shall seem equitable and just. An assessment made, under this provision of the city charter, against the New Jersey Railroad and Transportation Company is a violation of the exemption from taxation contained in the eighteenth section of their act of incorporation.

3. Laws passed to remedy the defective execution of powers, though retrospective in their operation, are not unconstitutional.

4. A law which confers power to supply, by appointment, a place vacated by *death or disability*, authorizes an appointment to be made where the vacancy is occasioned by *resignation*.

This *certiorari* was brought to set aside an assessment, made on property of the New Jersey Railroad and Transportation Company, for widening Market street, in the city of Newark.

The cause was argued at February Term, 1858, before the CHIEF JUSTICE, and Justices ELMER and HAINES.

*Whitehead, Zabriskie,* and *Bradley,* for plaintiffs in *certiorari.*

*F. T. Frelinghuysen* and *P. D. Vroom,* for defendants.

The CHIEF JUSTICE. By the act to incorporate the city of Newark, passed the 29th of February, 1836, the common council are authorized to cause a just and equitable assessment of the damages and expenses incident to the opening and widening of streets in said city to be made among the owners and occupants of all the houses and lots intended to be benefited thereby, in proportion to the advantages each shall be deemed to acquire. *Elmer's Dig.* 656, § 34. By a supplement to the charter, approved March 16th, 1854, (*Pamph. Laws* 395, § 6,) it is enacted, "that whenever any street, or part of a street, in the city of Newark, occupied or used by the track of any railroad company, shall require to be altered or widened for the convenience of public travel, and proceedings for

the altering or widening the same shall have been taken under the act to which this is a supplement, it shall be lawful for the commissioners, whose duty it may be to make a just and equitable assessment of the whole amount of the damages and expenses of such altering or widening among the owners and occupants of all the houses and lots intended to be benefited thereby, to assess such portion of said damages and expenses upon the corporation or company owning or using said railroad track as to them shall seem equitable and just; and such assessment shall be a lien upon any property of said company in the city of Newark, and may also be enforced in the same manner as the assessment upon said owners and occupants of houses and lots intended to be benefited thereby.

Under the provisions of the charter, the common council, in 1854, took measures for altering and widening, for the convenience of public travel, that part of Market street extending from the New Jersey Railroad depot to River street, on either side of the tracks of the New Jersey Railroad and Transportation Company, which tracks are owned or used by said company. The amount of the damages and expenses of the altering and widening of said street were duly ascertained at $28,788.37. Of this amount there was assessed upon nine houses and lots of the railroad company about $1250, and upon the company itself owning or using the railroad track, $18,000, that being the amount which it seemed to the commissioners equitable and just to assess on the railroad company under the provisions of the charter.

The company seek relief from the assessment made upon them as owners of the railroad track, and also from the assessment upon their houses and lots.

By the charter of the railroad company, it is enacted that the company shall pay a tax of one-half of one per cent. upon their capital stock, and that no other or further tax or imposition shall be levied or imposed upon the company. *Harrison* 385, § 18. Is the assessment upon

the company, as owners of the railroad, for the purpose of widening Market street, a tax or imposition within the meaning of the charter?

In the case of *The City of Paterson* v. *The Society for Establishing Useful Mannfactures*, 4 *Zab.* 385, it was held by this court that an assessment upon city lots, for grading and paving the street upon which they are situate, and for curbing and graveling the sidewalk in front of the respective lots, was not a tax within the meaning of that clause of the society's charter which exempted their property from all taxes, charges, and impositions under the authority of this state.

The same principle had been recognized and adopted in *The matter of the Mayor of New York*, 11 *Johns. R.* 77; *The Northern Liberties* v. *St. John's Church*, 13 *Penn. St. R.* 104; *Alexander and Wilson* v. *The Mayor, &c.*, 5 *Gill* 396. The subject has undergone an elaborate examination in the more recent case of *The Mayor and City Council of Baltimore* v. *The Proprietors of Green Mount Cemetery*, 7 *Maryland R.* 517. The charter of the cemetery company provided that the land appropriated as a cemetery, so long as used for that purpose, " should not be liable to any tax or public imposition whatever." It was held, nevertheless, that the cemetery company were not exempt from a paving tax for paving a street in front of their property; that the intent of the legislature was to exempt the property from all taxes or impositions imposed for *the purpose of revenue,* but not to relieve it from such charges as are inseparably incident to its location in reference to other property.

It has been made a question whether an assessment upon property to pay for opening or paving a street, in a ratio of the benefit conferred, is a tax within the appropriate meaning of that term, or an *assessment* for benefits conferred upon the property of the individual. There is, in the legislation of every state, a variety of statutes, whose primary design is the improvement of private property,

and in which the public interest is merely incidental. To effectuate the object of these laws, they authorize assessments, in the nature of taxes, upon individual property, and direct the mode of enforcing them. Of this nature are many statutes, public and private, in relation to the reclaiming of drowned lands and the draining and fencing of swamps and meadows. The immediate design of these acts is the improvement of private property, each individual interested being required to contribute to the expense in proportion to his interest in the property and to the benefit supposed to be conferred upon him. The public are interested in this class of improvements only as they tend to improve the salubrity of particular districts or to increase the general wealth of the community. These assessments have little analogy to public taxes, either in the purpose for which they are assessed or in the mode of enforcing them ; so a city ordinance requiring every lot-holder to drain the surface water from his lot, to avoid the creation of a nuisance affecting the public health, and in case of failure, directing it to be done at public expense, and the amount to be a lien on the respective lots, though the design be purely a public benefit, savors more of a mere police regulation than a measure of taxation. On the other hand, where lands are drained by public authority to preserve the public health, or sewers are constructed for common drainage and at public expense, and the amount thus drawn from the common treasury supplied by taxation upon the whole community, or upon that portion of it especially benefited, in either event the amount collected is a tax.

In *Bleecker* v. *Ballou*, 3 *Wend.* 263, it was said, by Savage, Ch. Just., in delivering the opinion of the court, that an assessment of the expense of pitching and paving a street, made by municipal authority, upon those interested in the houses and lots benefited by the improvement, in proportion to the advantages which each were deemed to acquire, was not a tax. The same view is expressed in *Sharp* v. *Speir*, 4 *Hill* 82.

And in the case of *The People* v. *The Mayor of Brooklyn,* 6 *Barb.* 209, it was held that such mode of assessment was not within the scope of the legitimate and constitutional exercise of the taxing power. The same doctrine was recognized in 5 *Dana* 28, and in 9 *Dana* 513.

But in the case of *The People* v. *The Mayor of Brooklyn,* 4 *Comst.* 419, it was held by the Court of Appeals, reversing the judgment of the Supreme Court, that such assessment was a tax, and the mode of assessing the amount among the owners and occupants of lands benefited by the improvement in proportion to the amount of such benefit, a constitutional exercise of the power of taxation. And this view is sustained in the case of *Nichols* v. *The City of Bridgeport,* 23 *Conn.* 189; *Scovill* v. *The City of Cleveland,* 1 *Ohio St. Rep.* (*N. S.*) 126; *The Mayor of Baltimore* v. *Greenmount Cemetery,* 7 *Maryland* 517.

The theory upon which such assessments are sustained as a legitimate exercise of the taxing power is, that the party assessed is locally and peculiarly benefited over and above the ordinary benefit which, as one of the community, he receives in all public improvements, to the precise extent of the assessment. 23 *Conn.* 204.

If the assessment made upon the railroad company is to be regarded as an exercise of the power of taxation, without reference to the special benefit conferred upon the company, then clearly the assessment is illegal.

But it is insisted that the assessment made upon the company is not a tax within the meaning of the exemption contained in the charter of the company, and falls directly within the principle recognized by this court in *The City of Paterson* v. *The Society, &c.,* 4 *Zab.* 386.

The assessment is, by the terms of the act, directed to be made, and is in fact made, not upon the property of the company, but upon the corporation itself. It is not to be assessed, (as in the case of houses and lots intended to be benefited,) in proportion to the advantages the company shall be deemed to acquire; but the commissioners

are to assess upon the company such portion of the damages and expenses as to the commissioners shall seem equitable and just. In what respect does this differ in principle from an ordinary case of taxation? The assessment is not required to be made with any regard to the benefit the improvement may confer upon the company. From all that appears, the assessment may have been graduated by a regard to the ability of the company to pay—to the value of its stock—or to the amount of travel that passed through the street upon the railroad. It does not appear that the improvement added any value to the road itself or to the stock of the company.

It is urged that the widening of the street gave increased facility to the operations of the railroad, by relieving the crowded state of the street, thereby diminishing the danger of accidents, allowing an increased rate of speed, and thus indirectly adding to the value of the road. But the same argument would apply with equal force to sustain an assessment against the company for paving, lighting, grading, or otherwise improving the streets and increasing the facilities of travel: indeed, it is difficult to imagine any purpose for which a municipal tax could be raised that might not, in the same way, be shown to be indirectly beneficial to the railroad company. But in what mode is the corporation specially benefited over any and every inhabitant of the city or traveler through its streets? If the assessment upon the railroad company may be sustained upon the ground of special benefits to the corporation from the increased facilities of travel afforded by widening the street, an assessment may be sustained upon the same ground against the owner of every express wagon or stage coach that travels the street. The assessment in this case is a clear exercise of the taxing power. It is made for a public purpose, and confers no special benefits upon the property of the company.

The assessment upon the houses and lots of the company falls within the principle adopted in 4 *Zab.* 386, and

must be affirmed. The objections to the legality of the proceedings in regard to the assessments are not well founded. The only fatal objection to their validity was cured by the supplement to the city charter, approved March 19th, 1857. *Pamph. Laws* 301.

ELMER, J. The case of *The City of Paterson* v. *The Society, &c.,* 4 *Zab.* 386, which adopted the decision in the case of *The Mayor of New York,* 11 *Johns.* 80, and agrees with the case of *Northern Liberties* v. *St. Johns Church,* 13 *Penn. St. R.* 104, is authority for holding that the assessments made on the houses and lots of the prosecutors, " in proportion, as nearly as may be, to the advantage each was deemed to acquire " by the altering and widening of Market street, in the city of Newark, are not such taxes or impositions as they are entitled to be exempt from by virtue of the 18th section of their charter.

But the assessment of eighteen thousand dollars on the railroad tracks is of a different character. The commissioners do not profess to have assessed it on the principle of its ratio to the benefit the company derived from the altering and widening of the street, but according to the authority intended to be conferred by the sixth section of the supplement to the charter of the city (*Acts of* 1854, *p.* 395,) as they " deemed to be equitable and just." In my opinion, this is a contribution exacted from the prosecutors, as their equitable and just share of the expense of a public improvement, and is properly a tax from which they are exempt. It was not denied by the counsel of the city, on the argument, that the grant, in the charter of the railroad company to be exempt from a tax, is a contract which cannot be constitutionally impaired, the only question in reference to this point being whether this was a tax within the meaning of the charter.

It was held in the New York Court of Appeals, in the case of *The People* v. *Brooklyn,* 4 *Comst.* 419, that assessments upon owners and occupants of lands for opening

and improving streets, in proportion to the amount of the benefit they received, are properly taxes, and to be justified as a constitutional exercise of an unlimited power of taxation, although they are not taxes of the description intended to be exempted by the statute relied upon in the case of *The Mayor, &c.*, 11 *Johns.* 80, and in other cases of a similar nature. The case of *Nichols* v. *Bridgeport*, 23 *Conn.* 189, is to the same effect. I concur in both propositions. The exemptions in the charter of the New Jersey Railroad and Transportation Company, and other similar charters granted by the legislature of this state, are connected with, and partly in consideration of provisions for the payment by the companies of specified taxes into the state treasury, and have been held by our courts to include not only taxes imposed expressly for state purposes, but all county, township or city taxes. To extend them beyond such taxes as are assessed as a burthen, so as to include those which are collected upon the principle of requiring the value of benefits received to be returned, would be to disregard the obvious intention of the legislature. Taxes of the general nature of those usually laid for defraying the expenses of the government, and such only, are to come within the fair meaning of the language used.

The expense of opening and improving roads and streets is undoubtedly a governmental burthen, and may be defrayed, at the discretion of the legislature, by taxes imposed on the state at large, or upon a particular district, or upon a particular class of persons or property, or upon the particular property benefited by the expenditure, in the ratio of the advantage derived. The constitution of this state has imposed no limits on this power, except that it can only be exercised as a legislative power. Taxes, to be such, and to come within the legislative power, must, perhaps, operate upon a community, or a class of persons or property, by some rule of apportionment; but they

may be universal or limited, discriminating or general, equal or unequal.

If the assessment on the railroad tracks can be considered in this case as a tax it is because it is of the nature of a burthen laid on a particular class, like taxes on banks, and is not to be regarded as, or meant to be, a mere exaction from one particular road. As an exaction from a particular road, if justifiable at all, it is only as an exercise of the power of eminent domain, whereby private property is taken for the public use, and this is prohibited by the constitution, unless there is compensation made.

In the case of *Canal Bank* v. *Mayor of Albany*, 9 *Wend.* 244, and in *The matter of Albany Street*, 11 *Wend.* 151, the Supreme Court of New York treat an assessment of property benefited by an improvement made for the public use as a taking of property for public use, and hold that the amount assessed must not exceed the benefit actually received. The constitution of Louisiana requires that taxation shall be equal and uniform throughout the state. It was held, in the case of *Yeatman* v. *Crandall*, 11 *Louis. R.* 220, and of *The New Orleans Draining Co., Ib.* 338, that local assessments for local improvements of a public nature are not taxes in the constitutional sense; but that if the property of any proprietor was not in fact increased in value more than the amount assessed against him, the property, to the extent of the difference, would be taken for a purpose of public utility without compensation, and therefore the assessment would be unconstitutional. Laws for the drainage or embanking of low grounds, and to provide for the expense, for the mere benefit of the proprietors, without reference to the public good, are to be classed, not under the taxing, but the police power of the government; and so, also, the regulation of fences and party walls. The altering and widening of Market street was ordered by the common council of the city expressly "for the convenience of public travel."

State v. City of Newark.

Some effort was made, by the counsel for the city, to show that the railroad company is in fact benefited by this improvement—all and more than they are required to pay. If so, why were they not assessed upon this principle? The commissioners did not ascertain that they were benefited; on the contrary, their return implies that they were not. They certify that they have assessed the whole expense "among the owners and occupants of all the houses and lots intended to be benefited by the altering and widening of Market street aforesaid, in proportion, as nearly as may be, to the advantage each is deemed to acquire thereby, except such portion of such damages and expenses which we have deemed it to be equitable and just to assess, and which we have assessed upon the New Jersey Railroad and Transportation Company, a corporation owning and using the said railroad track passing along Market street," &c. In any other light than as a tax for the purposes of the municipal government, this assessment is simply the taking of a sum of money from the railroad company for the public use, without even the pretence of compensation. As a tax, it is a burthen, and does not come within the reason of the Paterson case, or of the other like cases referred to; and, in either aspect, it is an exercise of power forbidden by the constitution.

Besides the objection to the assessment on the railroad track, thus disposed of, two objections were made to the legality of the whole proceedings, which remain now to be considered.

*First.* It was insisted that the several resolutions of the common council, relative to the altering and widening of the street, were not presented to the mayor on the next day after they were respectively passed and approved by him, or returned with objections, and then passed, or allowed to take effect, by not being returned within five days, as required by the charter. Some of the resolutions appear to have been duly presented and approved; but this cannot be said of them all. It is admitted, however,

that they were all passed and recorded in the book of minutes of the proceedings of the common council, and approved by the mayor, so as to come within the purview of the supplement to the charter, (*Acts of* 1857, *p.* 302,) which provides that such resolutions shall be deemed and taken to have been formally presented to, approved and signed; by him. This act is retrospective in its terms, so that the only question is whether it is constitutional.

Very many acts of a similar character have been passed, from time immemorial, by the British parliament and by the legislatures of this and of the other states of the Union. Some of the modern constitutions prohibit retrospective laws, but that of this state does not. In the case of *Watson* v. *Mercer,* 8 *Peters* 88, it was expressly decided that the constitution of the United States does not; and an act of the legislature of Pennsylvania, declaring acknowledgments of deeds by married women, in a form which had been judicially decided to be inoperative and void, so that no estate passed, to be nevertheless good and effectual, was held not to be prohibited by it. Laws of this description have been held valid in several of the states. *Barnet* v. *Barnet,* 15 *S. & R.* 72; *Beach* v. *Walker,* 6 *Conn.* 190; *Dulany* v. *Tilghman,* 6 *Gill & John.* 461; *Wilkinson* v. *Leland,* 2 *Pet.* 627; *Clarke* v. *McCreary,* 12 *Sm. & M.* 347; *Den* v. *Downan and Cambloss,* 1 *Green* 135.

In the case of *Good* v. *Zercher,* 12 *Ohio* 364, the contrary was held; but this case has been overruled. *Chesnut* v. *Shane,* 16 *Ohio* 599. The constitution of this state, like those of most of the states, divides the powers of government into three distinct departments, declares that no person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others, and vests the legislative powers in a senate and assembly. A statute which undertakes to take away from one person vested rights of property, and transfer them to another, against the actual or fairly implied assent of the party injuriously

State v. City of Newark.

affected, may well be considered as not a legitimate exercise of the legislative power, and as therefore unconstitutional and void. Acts attempting to declare that a will, which for want of some essential solemnity, was not, at the death of the person professing to make it, entitled to that character, have on this ground been declared void, and perhaps rightly. But laws curing defects, which would otherwise operate to frustrate what must be presumed to be the desire of the party affected, cannot be considered as taking away vested rights. Courts do not regard rights as vested contrary to the justice and equity of the case. If the statute now in question be allowed to render valid proceedings of the council, which would otherwise be invalid and inoperative, no one will be the least injured. So far from taking away any rights vested in the prosecutors, it will operate to confirm them. If it renders valid an otherwise illegal tax, it is to be presumed that the tax was levied for the public good. The prosecutors and others assessed for benefits will be the gainers by having those benefits confirmed. It was urged that this act attempts to revive what never had any existence. But these resolutions, although they were not legally passed, were in fact put in force. The work contemplated was done, and the benefits intended conferred. The case is like any other defective exercise of a power, which a court of equity will in many cases remedy, and which it is right and proper this statute shall be held to remedy.

*Secondly.* It is insisted that the common council had no right to substitute other commissioners in the place of those who resigned. The sixth section of the supplement (*Acts of* 1849, *p.* 206,) provides that, in case of the death or disability of one or more of said commissioners, it shall be lawful to supply the place so vacated. The word *disability,* as here used, is, in my opinion, extensive enough to cover, and was designed to cover, any cause which prevented the commissioners from acting. No power could compel them to continue to act, if they thought proper

to decline. The right of resigning an office or employment is universally recognized in our practice, and seems indispensable. If accepted by a power which has a right to fill a vacancy, it becomes complete, and the officer is held to be no longer capable of acting. There is in such a case a disability, which may be lawfully supplied.

I am of opinion that the assessment against the prosecutors of eighteen thousand dollars must be set aside, and the other assessments confirmed.

HAINES, J., concurred.

CITED *in State* v. *Ferguson,* 2 *Vr.* 127; *State* v. *Town of Union,* 4 *Vr.* 355; *State* v. *Fuller, Collector,* 5 *Vr.* 231, 232; *State* v. *Mayor, &c., of Newark,* 6 *Vr.* 163; *State* v. *Village of Passaic,* 7 *Vr.* 385; *State* v. *Mayor, &c., of Newark,* 7 *Vr.* 480; *State* v. *City of Elizabeth,* 8 *Vr.* 333; *State* v. *Mayor, &c., of Newark,* 8 *Vr.* 422; *The Tide Water Co.* v. *Coster,* 3 *C. E. Gr.* 530.