## TRINITY COLLEGE *vs.* THE CITY OF HARTFORD.

The special benefits resulting to owners of land upon highways form no part of the object for which highways are laid out. They are laid out to meet the public necessity for travel.

These special benefits are incidental, and are the good fortune of the land owner; but where compensation is to be made to such a land owner for land taken, they are to be considered in estimating the damage to be paid.

The benefits to be assessed for the expense of laying out and constructing a road, where such an assessment is provided for by law, are of the same character as those which are to be considered in reduction of the damage to be paid for land taken.

Where the benefit to the land owner as such, from the establishment of the road, is equal to the value of the land taken, he can not be said to have suffered any damage from the taking of his land for the road.

And it does not alter the case that his entire benefit is exhausted in being thus applied to his damage, while others, who are assessed for benefits, are not compelled to pay the full value of the benefits. So long as the injury to his property does not exceed the benefit he has no claim for damages.

This rule has become well settled in this state. The case of *Nichols* v. *The City of Bridgeport*, 23 Conn., 189, confirmed.

Commissioners of compensation, appointed by the common council of a city to hold office for the year, or during the pleasure of the council, and whose duty it is to appraise all damages in the laying out of streets, are public officers, and where it does not appear that they were freeholders or were sworn, as required by law, they are yet officers *de facto*, and their acts are valid as between the city and a party whose land has been taken for a public street. [One judge dissenting.]

Where the city charter required that the highway committee should, if they were able, agree on the damages with the party whose land should be taken, before applying to the commissioners of compensation, and it appeared that the chairman applied for that purpose to the president and treasurer of a college whose land was taken, both of whom replied that they were not authorized to act in the matter, it was held that the requirement was sufficiently complied with.

The city charter authorized an appeal, by any person whose land was taken for a public improvement, from the assessment of damages by the commissioners of compensation, to a judge of the superior court; and provided that "said judge shall have, for the purpose of disposing of said appeal, all the powers of the superior court, and may proceed by committee, jury, or otherwise, to reassess said damages and give judgment accordingly, and may issue execution in favor of either party for costs, to be taxed as upon civil process in the superior court." Held, that the judge was to be regarded as constituting a special tribunal for the particular purpose named, and that a motion for a new trial or other proceeding in error would not lie from his judgment.

PETITION for an injunction against the opening and construction of a street laid out by the common council of the city of Hartford, and for the setting aside of certain preliminary proceedings on the part of the city. On the trial in the superior court upon a general denial, the following facts were found by the court :—

By the 6th section of the charter of the city it is provided that " there shall be a court of common council of said city, to consist of two separate branches, a board of aldermen, and the common council board, who shall convene and act separately." The 7th section of the charter confers upon the court of common council " exclusive power to lay out and establish, within the corporate limits of said city of Hartford, new highways, streets, &c., whenever they deem it for the public good so to do." It then proceeds as follows :—" And whenever any public work shall have been lawfully laid out by said court of common council, said court may assess a proportionate sum of the expense of laying out and making such public work, upon any person or persons specially benefited thereby, and estimate the just proportion of such expense which such person should defray, and enforce the collection of the same ; provided always, that before taking any land or private property for the public use aforesaid, said court shall agree with the owner or owners thereof as to the damage done thereby, or shall cause a fair appraisal thereof and just compensation therefor to be made to the owner or owners thereof, by payment or deposit of such damages or compensation for the benefit of such owner or owners ; and provided further, that it shall be the duty of said court to enact ordinances containing suitable provision for giving notice to all persons interested in any property so taken of the proceedings of said court in that behalf, and of the appraisal of damages ; and provided further, that an appeal shall be allowed to any person aggrieved by an appraisal of damages or assessment of betterments to any judge of the superior court, within sixty days after public notice shall be given of such appraisal or assessment, which appeal shall be a suitable petition in writing for a re-appraisal or re-assessment, with a citation attached

thereto, and returnable in not less than eight nor more than twelve days after its date, and served at least five days before the return day upon the city clerk; and said judge shall have, for the purpose of disposing of said appeal, all the powers of the superior court, and may proceed by committee, jury or otherwise, to re-assess said damages or benefits, and give judgment accordingly; and if said damages are increased, or said assessment of benefits is reduced, award costs against said city; and if the said damages are not increased, or if said assessment of benefits is not reduced, award costs against the appellants; and shall in all cases issue execution if necessary, in favor of said city, for the amount of damages or benefits fixed by said re-assessments, and in favor of either party for costs, to be taxed as upon civil process in the superior court."

By the 8th section of the charter it is provided that " the court of common council shall have power, by a majority of the members of each branch, present and absent, subject to the approval or disapproval of the mayor, to make, alter and repeal ordinances, for the following purposes ; viz.:—For the laying out, altering, establishing and making highways; * * to provide forms of oaths for all officers of said city elected by city meeting, or appointed by the court of common council; * * to provide that assessments of benefits for any public work shall be a lien upon the land or real estate on account of which such assessment is made, which lien may be foreclosed at the suit of the city, in the same manner as a mortgage incumbrance; * * to prescribe oaths of city officers, and to authorize the mayor to administer oaths in all courts; * * to prescribe the forms of proceeding in all cases of taking lands for public use within said city not specially prescribed in this act; and to carry out all the powers conferred and duties imposed on said court by the 7th section of this act."

Pursuant to the authority thus conferred, the court of common council afterwards passed the following ordinances, which during the pendency of the proceedings in this cause were in full force, to wit :

Sec. 1. [Providing for notice to all parties interested, of the

laying out of any new highway or street and for the filing of objections with the clerk.]

SEC. 2. " The court of common council, by a concurrent vote of both boards, shall annually appoint a street commissioner and a city surveyor, who may or may not be members of said court, and shall hold office during its pleasure. The board of aldermen shall choose three members thereof, residing in different wards, and the common council board shall choose from their own number one member from each of the remaining wards, which persons so chosen shall, with the street commissioner as chairman, constitute the highway committee of the court of common council, and shall hold office during its pleasure ; and a majority of said committee shall have power to act in all matters within the authority of said committee. Said court shall also appoint, by concurrent vote, commissioners of compensation, one from each ward of the city, who shall be freeholders and not members of said court, and who shall severally hold office during the pleasure thereof, and shall be sworn to the faithful and impartial discharge of their official duty ; and said commission, so constituted, shall appraise all land-damages in cases where land is required for city improvements and can not be obtained by agreement with the owners."

SEC. 3. " Whenever any vote or resolution of the kind specified in the first section of this ordinance shall have been duly published, and it shall be necessary to take land, or any interest therein, belonging to private owners, for the improvement contemplated by such vote or resolution, the court of common council, before otherwise carrying the same into effect, shall, unless they obtain such land by voluntary dedication from the owners thereof, refer the subject-matter of the contemplated improvement to said highway committee, who shall thereupon, in behalf of said court of common council, proceed as follows :—Said committee shall obtain from the city surveyor a map or drawing explanatory of the contemplated improvement, and shall then *agree if possible* with the owners whose land may be required for such improvement, as to the compensation to be made therefor, and secure from

such owners proper evidence of such agreement. If said committee fail to agree with any owner they shall thereupon make oral application to the compensation commissioners for the appraisal of damages accruing to such owner by the establishment of such improvement; and after such appraisal is made shall obtain from said commission a certificate of its doings, and, as soon as may be, cause the same to be published in two or more daily newspapers issued in the city of Hartford, and the original certificate lodged with the city clerk. If, within sixty days after such publication, any person shall appeal from the appraisal of damages made as aforesaid to a judge of the Superior Court, said highway committee shall instruct and aid the city attorney in respect to the matter of said appeal until the same shall be determined. If all persons who are entitled to compensation shall agree upon the amount thereof, or shall at any time within said sixty days deliver a written waiver of their right of appeal to said committee, said committee shall immediately make their report to the common council. If an appeal shall be taken said committee shall make their report as soon as practicable after final judgment upon all such appeals. Their report shall set forth the amount of damages agreed upon with each owner, their application to the compensation commission, a certificate of the doings of such commission, an account of the appeals taken or waived, and of the result of all such appeals by judgment of the judge of the superior court; to the end that all damages thus ascertained may become a part of the expense to be assessed upon persons specially benefited by the improvement. * * *

Sec. 4. "The commissioners of compensation, when applied to by the highway committee for an appraisal, shall cause public notice in two or more newspapers issued within the city, to be given of a time and place where owners of land, whose damages are to be appraised, may be heard relative to the amount of such damages; at which time and place the highway committee may also appear and be heard relative to the same matter. At the time and place named in such notice said commissioners shall proceed to hear and deter-

mine the amount of damages accruing to such owner from the establishment of the improvement in question, and for that purpose may examine witnesses under oath, and may consider in estimating such damages, the amount of benefit accruing to the owner from such improvement, and deduct the amount of benefit from the gross amount of damages ; and if the benefit, in their opinion, exceeds the injury, shall certify that no damage is due to such owner on account of said improvement. And said commissioners, a majority of whom shall have power to act, shall make a certificate of their proceedings, and furnish the same to the highway. committee as soon as may be. If more than two of said commissioners shall be disqualified to act, the place or places of such may be supplied by the mayor."

SEC. 5. " The vote or ordinance establishing or discontinuing any highway or street in the city of Hartford, and every survey of any new highway or street approved by the highway committee and court of common council, shall be recorded in the city highway record book, kept for that purpose by the city clerk."

SEC. 6. " Whenever any of the public improvements specified in the first section of this ordinance shall have been established and laid out by the proceedings of the court of common council, and the same shall also, in cases where making or construction is required, be made and constructed, said court of common council shall proceed to assess a proportional sum of the expense of laying out or altering, or of laying out and making such public work, upon any person or persons, private or corporate, (including railroad corporations occupying streets or parts of streets with their tracks,) who may, in the judgment of said court, be specially benefited thereby, and shall proceed as follows : said court shall refer said matter, with or without instructions, to the highway committee, who shall thereupon proceed to make inquiry as to the just proportion of such expense which each such person should defray, and make out a proper written schedule of their estimates, with names and amounts ; and, when the same shall be completed, shall cause the same to be published in two or more newspapers

issued within the city of Hartford, together with a notice, attached to such schedule, that any person aggrieved may, within ten days after the day of the first publication of such notice, lodge with the street commissioner a written statement of his objections to the estimates of said committee. At the end of said ten days said committee shall receive said statements from the commissioner, and shall proceed to revise their said estimates in view of the objections stated, and after such revision shall report their final estimate to the court of common council, together with the written statements of objections. The court shall thereupon proceed to make such assessment upon persons benefited by said improvement as shall seem to them just; and, after the same is completed, shall cause public notice of the same to be given by publication in two or more newspapers issued in the city of Hartford." * * *

SEC. 7. * * * "All assessments for all such public works or improvements shall be deemed to be made on account of the land or real estate adjoining the place or location of such improvements, or of such land or real estate of any person or persons against whom such assessment is made as may be within reasonable vicinity to such improvement."

The foregoing ordinance was passed on the 11th of July, 1860. The following was passed on the 23d of April, 1860.

SEC. 3. " Commissioners of compensation, and appraisers of damages, shall be sworn justly and truly to estimate and appraise all the damages by them to be appraised, during their continuance in office, according to their best and honest judgment; and certificates, on a record of such oath, shall be made according to the requirements of the first section of this ordinance."

On the 4th of June, 1863, sundry inhabitants of the city of Hartford brought their petition to the court of common council, praying for the widening, straightening, grading and improving of the street known as Rifle Avenue, and for the laying out of a new highway or street, contiguous to, and in part over, and as a substitute for, Rifle Avenue; which petition was subsequently, on the 22d day of June, 1863, referred

by the court of common council to the highway committee; and Wm. M. Charter, street commissioner and ex-officio chairman of the highway committee, on the 13th of July, 1863, submitted to the court of common council a report in favor of the improvement, with a resolution to lay out a new street as a substitute for Rifle Avenue. The court of common council on the same day made the following order :—

" *Ordered*, That the foregoing resolution be published in two daily newspapers issued in the city of Hartford, attested by the clerk of each branch to be pending in this court, together with a notice appended to such resolution as published to all persons to file a written statement of their objections, if any they have, with the city clerk, within ten days from the day of the first publication of said notice inclusive."

The foregoing order was duly published as therein prescribed, but whether the officers of Trinity College filed with the city clerk a written statement of their objections within the time prescribed in the order, or at any time, did not appear. On the 10th of August, 1863, the foregoing resolution was adopted in both branches of the court of common council, and on the succeeding day was approved by the mayor of the city. After the passage of the resolution Mr. Charter, street commissioner and chairman of the highway committee, obtained from the city surveyor a map explanatory of the proposed new highway, and made application to Mr. Eliot, President, and Mr. Belknap, Treasurer of the college, which corporation were the owners in fee of the lands described in the petition, and over which the new highway was in part proposed to be laid, to agree as to the compensation which the corporation should receive in damages for the laying out and establishment of the highway ; but both Mr. Eliot and Mr. Belknap replied that they were not authorized themselves to agree for the corporation, and knew of no one who was so authorized, and that the city must take the legal measures in the premises. Neither the highway committee nor Mr. Charter made any other application to Trinity College, or its trustees or officers, for such agreement, and no vote of refusal was passed by the

Trinity College *v.* City of Hartford.

trustees or by the corporation on the subject, and no corpo-rate action in the premises was by them taken ; but the said Eliot and Belknap, and Isaac Toucey, Esq., one of the board of trustees, subsequently appeared before the commissioners of compensation, at their meeting duly notified and held on the subject of the assessment of damages to Trinity College and others on account of the proposed highway, and had an opportunity to be heard upon the question of damages, and protested against the laying out and establishment of the highway on the route proposed. Mr. Charter afterward made oral application to Nathaniel H. Morgan, Esq., chairman and clerk at that time of the board of compensation commis-sioners, for the appraisal of damages accruing to Trinity Col-lege by the establishment of the highway ; but no vote or reso-lution had been or was at any time passed by the highway committee, to the effect that they had made an effort, and were unable to agree with the college, or any officer or agent of the college, with reference to the question of damages, and no record of any kind was at any time made by the highway committee respecting the laying out or establishment of the proposed highway, and the highway committee were accus-tomed to keep no record of their official proceedings.

Upon full hearing and consideration the board of com-pensation commissioners estimated the damages accruing to Trinity College by the establishment of the highway at five hundred dollars over the benefits which would in their judg-ment accrue from the same to the college, and delivered to Mr. Charter a certificate of their doings in the premises, which he caused to be published in two daily newspapers issued in the city of Hartford, and lodged the original certificate with the city clerk.

The highway committee and the commissioners of compen-sation, for the time involved in this proceeding, were in fact appointed in the mode and possessed the qualifications re-quired by the charter of the city. The highway committee were one half members of each branch of the court of com-mon council, and resided one in each ward of the city. The commissioners of compensation also resided one in each ward,

and were freeholders, and not members of the court of common council. Four of them were proved by the record to have been duly sworn. The other two held over from the preceding year, and with respect to them it did not appear whether or not they were sworn, or whether a certificate that any of the members of the board had been sworn was lodged with the city clerk as required by one of the ordinances of the city. Each branch of the court of common council has a clerk, and keeps a record of its proceedings, but it did not appear from their records, or from any record, that the commissioners of compensation were freeholders, or that they resided one in each ward of the city, or that they were not members of the court of common council. Neither did it appear from the records of the compensation commissioners, or from any record, that the board fixed a time and place for a hearing upon the question of damages to Trinity College by the laying out and establishment of the proposed highway, nor that the members of the highway committee resided one in each ward of the city, and were one half members of each branch of the court of common council.

The highway committee was not convened, and its members did not meet, to consider the petition for the proposed highway, nor make the report nor pass the resolution hereinbefore stated for the laying out and establishment of the same, or any vote or resolution, or take any action on the subject; but all the acts were done by the street commissioner without the actual concurrence of or any consultation with the highway committee, but were done by him for and in the name of the committee, and in pursuance of a general understanding on his part that those acts and duties should in such cases be performed by him.

The lands belonging to Trinity College affected by the laying out of the proposed highway are situated on both sides of Rifle Avenue, and consist of a dwelling house and lot occupied by Professor Brocklesby on the south side of the avenue at its intersection with Washington street, which lot extends westerly along the avenue about 100 feet. The south line of the proposed highway cuts this lot from Washington street

westerly its whole depth, and passes over the site now occupied by the dwelling house. The remaining lands are on the northerly side of, and bounded on the avenue, and extend westerly from Washington street along the north line of the avenue about 1000 feet, being all in one body or tract, (though obtained under two different purchases,) except as it is divided by fences into several distinct enclosures. The highway is also laid over the lands of other persons lying west of the college lands. The commissioners of compensation estimated the gross damages to Trinity College at $3,500, and also estimated the benefits the college would receive from the establishment of the highway at $3000, and deducted this sum from the estimated damages. In their assessment of damages it did not appear upon what principle they proceeded. But the committee agreed upon by the parties after the appeal by the college, as hereinafter stated, and the judge of the superior court to whom the appeal was taken, and to whom the committee made report, proceeded upon the principles stated in the record of their proceedings as hereinafter set forth.

Afterwards, within sixty days after the appraisal of damages, on the 19th of October, 1863, the trustees of Trinity College appealed from the decision of the board of compensation commissioners in making their appraisal of damages to Hon. Henry Dutton, one of the judges of the superior court, who appointed Loren P. Waldo, Esq., a committee to reassess the damages and make report. The committee having fully heard the parties made the following report :—

" That he met the parties by agreement at the office of the street commissioner on &c., when and where he heard them with their evidence and counsel, and having duly considered the same, finds and determines that the damages accruing to the trustees of Trinity College, the appellants, from the establishment of the new street, over and above the benefits accruing to them from the improvement, amount to the sum of five hundred dollars, being the same sum at which the damages were assessed by the commissioners of compensation. And the committee would further report, that on the trial of said appeal the parties admitted and agreed that said new street

extended from Lafayette street westward to Park river, a distance of 3,314 feet, and over lands of other proprietors as well as land of the appellants ; that the laying out, opening and making said street would increase the value of the real estate generally in its vicinity ; and that the length of the street upon the land of the appellants is about 1,000 feet. The only damage claimed by the appellants was for taking a portion of their front on Lafayette street, and extending westward from Lafayette street about three hundred and fifty feet ; and for so dividing their land on the west side thereof for a distance of about one hundred and fifty feet eastward from their west line, as to render it comparatively valueless for building lots. The appellees insisted that the value of the appellants' land between the above-mentioned points was greatly increased by the establishment of the new street, and they offered the testimony of several witnesses to show that the market value of this portion of the land was very materially enhanced thereby. To the admission of this evidence the appellants objected on the ground that the same was irrelevant, and insisted that it was not competent for the committee to consider any benefits accruing to the appellants from the establishment of the street to be enjoyed by the college in common with the citizens of the state at large, or of the city, or by the owners of land within the district required by the city ordinances to be taxed for the expense of opening and making the street ; that the committee was only to estimate the damages which it occasioned them, deducting therefrom only such benefits as were local to the appellants' land and peculiar to the land and to the college, and such as were direct and immediate and caused by the very taking of the land. The committee believing that the true damages to the appellants could only be ascertained by taking into consideration the special and peculiar benefits derived from the new street, admitted the evidence for the purpose of enabling him to determine how much the whole tract of land belonging to the appellants over which the street was laid, was injured in value from the establishment of the new street. And in coming to the result above named, the committee deducted the enhanced value of

the appellants' land accruing from the establishment of the new street, ascertained as aforesaid, from the damages to the same land otherwise resulting from the improvement."

The appellants filed a remonstrance against the acceptance of this report, and a hearing was had on the same before Judge Dutton, who overruled the remonstrance, accepted the report, and rendered judgment awarding $500 damages to the appellants, and costs in favor of the city. The appellants thereupon filed the following statement of exceptions, made and allowed by the judge in the form of a motion for a new trial, which was reserved by the judge for the advice of the supreme court.

" Upon the hearing of the remonstrance to the acceptance of the report of the committee, it appeared by the report and otherwise, that the new street was laid out 50 feet wide from La Fayette street to Park river, in part over and in lieu of Rifle avenue, so called, an open passway which had never been laid out or accepted as a highway ; that the easterly end of said new street, commencing at La Fayette street, was laid over a lot or tract of land of the appellants, leaving land of the appellants of the width of 100 feet or more on each side of said new street suitable for building lots, and giving increased facilities of access to the rear of said tract of the appellants ; that said new street was also laid over the lands of other proprietors, giving to them also suitable fronts for building lots and greater convenience of access to their lands ; that by the laying out of said new street the land of the appellants and the land of said other proprietors were made of greater marketable value, in some instances of such other proprietors to a large amount, and in the case of the appellants to an amount equal to the damage done to them by laying out the new street, except five hundred dollars ; and that said committee in re-assessing said damages deducted said increase of value from what would otherwise have been the value of the land so taken, contrary to the objection of the appellants ; but that the increase of value so deducted by said committee was not to any extent owing to any general increase of value to the lands lying on or in the vicinity of said new street, including the land of the appellants, by reason of the laying out of the

same. The appellants on the hearing of said remonstrance claimed that the benefits so set off and deducted by said committee from the damages arising from taking their land, were not the local, particular and direct advantages which could by law be set off or applied to the damages arising from taking the land, and that such action of the committee ought not to be approved and adopted by me; but being of opinion that inasmuch as the appellants' land was only a single tract, and the benefits which were set off resulted merely from the change of condition of this tract by the laying out of the street, making portions of it more accessible and more saleable, these benefits were the direct, local and particular benefits which may be by law set off, I overruled the objection, and approved and adopted the action of the committee, and re-assessed the damages at five hundred dollars. The appellants further claimed that by the charter of the city, to which reference is to be had, no benefits of this kind or resulting from this cause could be assessed by the committee, whose duty it was to assess damages; that the damages ought to be assessed by one committee and the benefits subsequently by another, and that in assessing the damages no regard could be had to these benefits; and they objected to the acceptance of the report on the ground that, in ascertaining the true amount of the damages which they had sustained, the committee had taken into consideration the benefits which had accrued in this manner to the land. But I overruled this objection, and approved and adopted the proceedings of the committee. The petitioners, feeling aggrieved by the decisions aforesaid, move for a new trial, by virtue of the clause in the 7th section of the charter of said city, in which it is provided, with reference to the assessment of damages and benefits in laying out streets, that " an appeal shall be allowed to any person aggrieved by an appraisal of damages or an assessment of betterments to any Judge of the Superior Court," and that " said judge shall have, for the purpose of disposing of said appeal, all the powers of the superior court, and may proceed by committee, jury, or otherwise, to reassess said damages or benefits, and give judgment accordingly."

Which motion is allowed, and reserved with stay of execution for the advice of the Supreme Court of Errors, in Hartford county at its next session, subject to the decision of said court whether the same can be entertained.   DUTTON, J."

The supreme court refused to entertain the motion for a new trial and dismissed the same.*

---

* The case upon the motion for a new trial for error in the rulings of Judge Dutton upon the hearing of the remonstrance of the respondents against the acceptance of the report of the commtttee, came before the Supreme Court at its session in Hartford County in February, 1864.   As no opinion was written in the case it was not reported.   There were present Hinman, C. J., Butler and McCurdy, Js. Dutton, J., having tried the case below did not sit.   He had allowed the motion and reserved it for the advice of the Supreme Court, "subject to the decision of said court whether the same can be entertained."   Some facts not entirely necessary to the principal case are given in the report above, that the part of the case here presented may be better understood.

*C. R. Chapman* and *Hamersley*, for the City of Hartford, moved that the case be stricken from the docket on the ground that the motion could not be entertained and that the court had no jurisdiction in the matter.   They contended that the statute allowed the appeal to Judge Dutton only as an individual judge, and not as a court, and that he sat, not as the superior court, and not as a court in any proper sense, but as a special statutory tribunal, for the particular duty assigned to him on such an appeal by the charter of the city; and that therefore there had been no judgment of a court and no proceeding in court, and therefore nothing that this court, upon any proceedings in error whatever, could take cognizance of.   They cited, Constitution of Connecticut, Art. 5, § 1; Rev. Stat., tit. Courts, sec. 10; City charter, sec. 7; *Green* v. *Hobby*, 8 Conn., 165; *Stearnes* v. *Richmond*, 9 id., 112; *Humphrey* v. *Marshall*, 15 id., 341, 345; *Wyeth* v. *Richardson*, 10 Gray, 240.

*C. Chapman* and *Towle*, for Trinity College, contended that even if the judge were to be considered as merely sitting in chambers, and not as holding a court, yet it did not follow that his judgment could not be reviewed by this court; that habeas corpus cases were thus tried and yet the decisions reviewed by the higher court; (*Jackson* v. *Bullock*, 12 Conn., 38; *Pratt* v. *Allen*, 13 id., 119;) but that the case did not necessarily stand upon that ground, because the act under which the appeal was taken and which gave the judge his jurisdiction, provides in express terms that "said judge shall have for the purposes of disposing of said appeal *all the powers of the superior court*;" (City charter, sec. 7;) that even if he had not all the attributes of a court yet that he had power to reserve for the advice of this court the questions arising on a motion for a new trial; that he had allowed the motion and had merely reserved the questions arising on it for advice, which was always an informal proceeding; and that to entertain such a motion so reserved does not require a jurisdiction in this court like that which would be required if the case were brought up by writ of error; and that even if the court technically had not jurisdiction, the questions were of so great importance and so constantly arising in the laying out of new streets in our cities that it was very

After the conclusion of the above legal proceedings, Joseph Pratt, then street commissioner, made a final report for the highway committee, to the court of common council, stating the previous proceedings in the case, and recommending the adoption of sundry resolutions for the laying out and establishing of the highway, directing the city auditor to draw an order on the city treasurer in favor of the trustees of Trinity college for the sum of $500, and to deposit the same with the city treasurer subject to the order of said trustees, establishing the grade of the highway and directing the street commissioner upon such payment or deposit to open the highway, and remove all obstructions from, and grade and complete the same for public use; which report was accepted and resolutions adopted by the court of common council on the 22d day of August, 1864, and on the same day approved by the mayor of the city.

Upon these facts the case was reserved for the advice of this court as to what decree should be passed.

*C. Chapman* and *Towle*, for petitioners.

FIRST.—The commissioners of compensation, and Judge Dutton, *exceeded their jurisdiction* by taking into consideration benefits of a general character in awarding damages.

1. This is a question of great importance and one never before raised in this court. It arises under the modern system styled the "assessment of benefits," by which the expense of building a road or street is imposed, not upon the state or town at large, but upon the owners of lands which are "specially benefitted," to wit, lands "adjoining" or "within reasonable distance." City ordinance, sec. 7. Our system was derived from that of New York. A slight change has however been introduced in respect to one of the details. This change has led our city officials into a gross error, as we

desirable that the court should give its opinion upon them, and not dismiss the case without hearing it.

The court decided, all the judges concurring, that a motion for a new trial or other proceedings in error from the judgment of Judge Dutton, in view of the character of the tribunal which he constituted under the provisions of the charter, would not lie.

shall show. In New York all " damages " are paid in money or its equivalent, all " benefits " are taxed irrespective of ownership. If the same person is allowed damage, and also receives benefit, his *tax* upon the latter is set off, and the tax only. But here the *gross* benefit is set off, irrespective of what others get, or the tax they are required to pay, or our own fair proportion. (1.) The practice here violates the charter and ordinances. (2.) It is unequal taxation, such as could not have been intended by the legislature. (3.) It is not "just" compensation. It is exactly the case where the doctrine of *general average* should apply. The property of one is destroyed for the benefit of a class, himself included. No compensation can be just which ignores that doctrine. (4.) If we owned no land other than that taken we would be paid in full. If we owned only the land benefitted we would pay only a tax. This mere accident of ownership is to save money to the other land owners. This is an absurdity never intended. The intention of the system is that all damage and expenses shall constitute one fund, all benefits another, the latter to be taxed in equal proportion to pay the other. The present committee are appointed to estimate damages only. A future committee are to ascertain the other expenses, and the benefits, and to tax the latter. In New York one and the same committee do all this at once and beforehand. They can thus ascertain the tax. Our committee can not. Our city officials have disregarded this difference in the two systems.

2. In New York and other places where this system prevails, *the tax, or proportion* of benefit which is thus deducted, is often styled " benefit." Our city authorities mistake the meaning of that word as thus used, and understand it to mean *gross* benefit. Our opponents claim that the case of *Nichols* v. *Bridgeport,* 23 Conn., 189, sustains their practice. The court in that case meant to decide only that the assessment or proportion of benefit could be deducted. This is evident from the cases cited, all of which were cases of *an assessment,* not gross benefit. The same thing is evident from the language used by Hinman, J., who delivered the opinion of the court.

See pp. 204, 5, 6.  This case has been construed by an able text-writer, as holding that *an assessment*, the tax, may be deducted.  Sedgw. Const. Law, 503.  The court apply the phrase "local and peculiar" to this assessment of benefit, using that term, however, in a different sense from what it has elsewhere, as we shall hereafter show.

3. In order to understand what is the meaning of the terms "benefitted," "specially benefitted," &c., we must look at them from the stand-point of the political economist.  The matter is one relating not to mere law, but to public policy and economy. (1.) A road benefits *lands*, or individuals in respect of lands. It sets the lands up nearer together.  It saves the occupants distance, time, expense.  In view of this saving the land rises in market value.  Lands, like stocks, are valuable according to what they will produce.  To save time and expense in travel and transportation is to increase the clear annual income.  Every $6 thus saved per annum adds $100 to the market value.  The same rule applies to streets.  This is the philosophy of our increase of value.  (2.) The whole state is benefitted by the increase of capital thus caused.  It will add to the taxable fund of the state, increasing its power, diminishing taxes to others.  (3.) Every governmental enterprise tending to increase capital lying within the state "specially benefits" him whose private capital is increased.  Roads, canals, bridges, ferries, &c., create capital by adding to the clear product of the lands accommodated.  Drainage acts do the same.  Flowage acts add to the capital, not particularly of the mill owner, but of the owners of land in its vicinity. These enterprises raise the general level of capital all over the state, but, as it were, elevate a certain district above the rest by a special benefit.  (4.) The state may open roads and has the eminent domain.  For convenience it entrusts this duty and power to the towns and cities.  They act simply as the agents of the state at large.  (5.) Ordinary governmental expenses are paid by taxes laid upon property generally, each kind being taxed as nearly as may be in proportion to the benefit it derives from the government and its protection. Extraordinary expenses, such as that of opening a road,

resulting in special benefit, should be paid out of that benefit. All property specially benefitted should of course contribute in equal proportion. (6.) Our damage consists in the taking of private capital from us for the public good. Our benefit is not a part of our damage, not a mitigation of damage, but a distinct, independent thing. Our damage is immediate, direct, sounding in tort; our benefit is speculative, prospective, dubious, sounding in contract. Our damage is the being thrust out from a strip of land, prevented from using it for buildings or business; our benefit is the right to *travel over* that land in common with all other citizens, and is our share of the public good. (7.) A government enterprise producing benefit to individuals within a limited district creates no *debt* to the state. As in a partnership, the act of all is the act of each, and such benefit is the result of one's own enterprise, one's own earning. (8.) It is no debt as against others. Our rights are equal to theirs. (Const., Art. I, sec. 1.) Suppose twenty neighboring farmers unite to build a bridge. They become partners *quoad* the bridge. So do the citizens of the state in respect to a public road. It is a public investment. Suppose A's farm is benefitted, say $100. That creates no " debt " against him. Suppose material, say plank for the flooring, were purchased from him worth $100. His benefit could not be set off against the price. The same principle applies in our case. Our land taken is but *material*. A's tax or proportion of the expense of the bridge might when ascertained be set off. So may our tax. But it is not and can not yet be ascertained. To consider our gross benefit is to make a *debt* of it, and to *set off* that debt against the one due to us. (9.) In the case of a railroad or canal the deduction of benefit is wrong. It saves outlay of capital and lowers the rate of tolls, thus saving annual expense to land-holders who use the road and save time by it. General average requires the land to be paid for, and tolls laid accordingly, so that all shall contribute. (10.) What lands will save distance by a road is matter of simple measurement. In case of a new road or street laid parallel to an old one all lands lying short of half way will save. In

New York the rule of law is to tax lands so lying. Our system has no such inflexible rule, but the principle is the same, to wit, to tax all " benefits." Benefit from a street is but another name for saving of distance.

4. This deduction of benefit has been condemned in almost every state in the union, our own included. Our opponents seek to avoid the force of the decisions by the most fallacious and distorted readings. *James River & Kanawa Co.* v. *Turner*, 9 Leigh, 313. This is a leading case. The Canal Co. insisted that Turner's " benefit " should be considered. That benefit consisted in the increase in value of his adjoining land. That increase was caused by the prospective saving of annual expense in travel and transportation to be afforded by the canal. The court held that such increase could not be considered. The reasons given are the same as those we have urged. *Woodfolk* v. *Nashville & Chattanooga R. R. Co.*, 2 Swan, 422 ; *Meacham* v. *Fitchburgh R. R. Co.*, 4 Cush., 291 ; *State* v. *Miller*, 3 Zabr., 383 ; *Carpenter* v. *Landaff*, 42 N. Hamp., 218. The same rule has been established in our own state, in *Nicholson* v. *N. York & N. Haven R. R. Co.*, 22 Conn., 78. Nicholson's land, in common with the rest of the city, was, by means of the railroad, set up nearer to New York and intermediate localities. All the lands in the city were enhanced in value by the same process. It was a benefit of a general character. The jury were instructed not to consider advantages of a general character, and they did not consider Nicholson's increase of value ; and the supreme court held this to be right. *Dickinson* v. *Inhabitants of Fitchburgh*, 13 Gray, 546 ; *Palmer Co.* v. *Ferrill*, 17 Pick., 58 ; *Upton* v. *So. Reading Branch R. R. Co.*, 8 Cush., 600 ; *Petition of Mt. Washington Road Co.*, 35 N. Hamp., 134 ; *Isom* v. *Mississippi Central R. R. Co.*, 36 Miss., 300 ; *Milwaukie & Mississippi R. R. Co.* v. *Eble*, 4 Chand. (Wis.) 72, 83 ; *Garret* v. *City of St. Louis*, 25 Misso., 505 ; *Porter* v. *North Missouri R. R. Co.*, 33 id., 128 ; *Boston & Maine R. R. Co.* v. *County of Middlesex*, 1 Allen, 324 ; *Meacham* v. *Fitchburgh R. R. Co.*, 4 Cush., 291.

5. The city ordinance, sec. 4th, directs that " benefit " may

be considered. There is a kind of benefit possible to accrue from opening a road which may be considered and to which the word as here used must be confined. None such exists, however, in our case. (1.) The benefit to which we allude is any *peculiar* one ; one distinct from that of the saving of distance, time, and expense in travel ; drainage, for example. Such a benefit is not the political or public one which the state intended. In Nicholson's case the court apply the term "local and peculiar" to such benefit. The benefit to be considered must be peculiar, not in the sense of *ownership*, but as contrasted with that received by others generally, received in a different way. Our benefit is not a peculiar one in any sense. It is confessedly the same as that received by all the lands along the line of this street, and is therefore a benefit of "a general character." But whatever name is given to it, to deduct it is unjust and unequal ; the very evil the cases seek to avoid. (2.) The "damages" to be allowed us would be by law confined to direct and imme-diate ones. *Clark* v. *Saybrook,* 21 Conn., 322. The word "benefit," used in this section, must be confined in like man-ner. But our increase of value is remote, speculative, pros-pective, dubious. It arises in view of supposed future gains from rents, &c. This supposition may turn out an erroneous one. (3.) The commissioners of compensation are authorized only to estimate damage. They are like a committee ap-pointed, in the case we have supposed of the twenty farmers, simply to estimate the value of the materials taken from A ; and this before the bridge is built, or the expense or total bene-fit ascertained, or the proportion to be paid by each. They can not anticipate and estimate the general benefit which is to be the basis of *taxation.*

6. A court of equity should interfere to correct this error of law by enjoining all proceedings, and perhaps ordering a new estimate of damages. *Lawton* v. *Commissioners of Cam-bridge,* 2 Caines, 179, 182 ; *Birley* v. *Constables of Charlton,* 3 Beav., 499 ; *Penrice* v. *Wallis,* 37 Miss., 172 ; *Baldwin* v. *City of Buffalo,* 29 Barb., 396 ; *Ragatz* v. *City of Dubuque,* 4 Iowa, 343 ; Caldwell on Arb., 140, 144 ; 2 Story's Eq. Jur.,

§§ 1455, 6 ; *Doty* v. *Judson,* 2 Root, 427 ; *Lee* v. *Patillo,* 4 Leigh, 436 ; *Fitch* v. *Ayer,* 2 Conn., 143, 147 ; *Wells* v. *Bridgeport Hydraulic Co.,* 30 id., 316. An action of trespass could not be sustained by us at law, as this error does not appear upon the face of the proceedings.

SECOND. The city authorities have not acquired the *legal right* to take our land, and their doing so would be a wrong.

1. The charter and ordinances empower them to take land only when certain specific facts and circumstances exist ; and the only evidence allowed by law to prove that such facts do exist is the finding or recital thereof *by record,* by a proper officer or tribunal. In the present case such findings or recitals are fatally deficient. (1.) There is no finding by the court of common council that the persons composing the highway committee in 1863 were *residents of different wards.* That court was the proper tribunal to find this fact. Its finding could only be by its record, as it speaks only by that. That finding is the only evidence allowed by law. This is a rule of evidence adopted from the earliest period for wise ends. There being no such evidence the case stands as if the fact did not exist, and the requirements of the statutes are not complied with. This being a special statutory power every requirement must be strictly pursued. *Huntington* v. *Birch,* 12 Conn., 150 ; *Potwine's Appeal,* 31 id., 383 ; *Rex* v. *Inhabitants of Hulcott,* 6 T. R., 583, 7 ; *Rex* v. *Inhabitants of Chilverscoton,* 8 id., 178 ; *Rex* v. *Inhabitants of Moor Critchell,* 2 East, 66 ; *Regina* v. *Parish of St. George,* 28 Eng. L. & Eq., 300. (2.) There is no finding that the commissioners of compensation were residents of different wards. (3.) Nor that they were freeholders. In *Nichols* v. *Bridgeport,* 23 Conn., 189, this defect was held (by the majority of the court,) to be cured by the fact that a subsequent committee had acted. No such committee has acted here. In *Judson* v. *Bridgeport,* 25 Conn., 426, the defect was held to be fatal. See also *State* v. *Jersey City,* 1 Dutch., 309 ; *Williams* v. *Holmes,* 2 Wisc., 129, 144. (4.) The very organization of this commission, a standing committee, is not warranted by the charter, and is wholly void. *State* v. *City*

*of Hudson,* 5 Dutch., 104, 109. The city having thus failed to comply with the law, its entry upon our land would be a trespass; its remaining there a nuisance; and the entry of every traveler would be a trespass. Our injury could not be compensated in damages; endless litigation would ensue. In such cases equity will interfere, as is well established.

*Hyde* and *Strong,* for the respondents.

1. By the charter of the city the power of laying out streets and of assessing damages to the owners of land taken for such streets, is conferred on the common council exclusively, with provision for an appeal to be taken from such assessment by any party aggrieved to a judge of the superior court. City charter, sec. 7. In this case this power has been exercised by the court of common council, and all the steps provided in the charter, including the appeal, have been taken. The question of damages has then become *res adjudicata;* and the superior court, as a court of chancery, will not review the proceedings. *Hood* v. *N. York & N. Haven R. R. Co.,* 23 Conn., 609; *LeRoy* v. *City of New York,* 4 Johns. Ch., 352; *Alexander* v. *City of Baltimore,* 5 Gill, 383.

2. If the question were an open one, the principles on which the committee and the judge to whom the appeal was taken proceeded, are correct. *Clark* v. *Saybrook,* 21 Conn., 321; *Nicholson* v. *N. York & N. Haven R. R. Co.,* 22 id., 74; *Nichols* v. *Bridgeport,* 23 id., 189; *Commonwealth* v. *Coombs,* 2 Mass., 489; *Commonwealth* v. *Sessions of Norfolk,* 5 id., 438; *White* v. *Commissioners of Norfolk,* 2 Cush., 361; *Meacham* v. *Fitchburg R. R. Co.,* 4 id., 291; *Upton* v. *So. Reading Branch R. R. Co.,* 8 id., 600; *Shaw* v. *City of Charlestown,* 2 Gray, 107; *Dickinson* v. *Inhabitants of Fitchburg,* 13 id., 546; *Livingston* v. *City of New York,* 8 Wend., 85; *Betts* v. *City of Williamsburg,* 15 Barb., 255; *The People* v. *City of Brooklyn,* 4 Comst., 420; *McMasters* v. *The Commonwealth,* 3 Watts, 292; *Symonds* v. *City of Cincinnati,* 14 Ohio S. R., 147; *Alexander* v. *City of Baltimore,* 5 Gill, 383; *Livermore* v. *Jamaica,* 23 Verm., 361.

3. The proceedings in laying out this street are not invalid

because the highway committee or the board of commission-
ers of compensation appointed by the common council have
not literally performed the duties assigned them, or because
there is no record of their doings. These committees were
not required by any statute law or by the charter of the city.
Their acts were of no validity in and of themselves. They
reported their doings to the court of common council, and
when adopted and approved by that court they became valid
and binding, not as the acts of the committees, but as acts
of the common council. *Sower* v. *City of Philadelphia,* 35
Penn. S. R., 231 ; *Preble* v. *City of Portland,* 45 Maine, 241 ;
*Nichols* v. *Bridgeport,* 23 Conn., 189, 213. The duties of the
highway committee were merely ministerial, and no record of
their doings is required. *Nichols* v. *Bridgeport,* 23 Conn.,
212 ; *Williams* v. *Hartford & N. Haven R. R. Co.,* 13 id.,
397, 410. The board of commissioners of compensation were
not appointed under any statute law, or under any provision
in the charter, and are unlike appraisers appointed under a
provision of public law requiring persons of certain qualifica-
tions to be appointed in each case. The court of common
council which established this board may at their pleasure
change the qualifications required of its members or abolish
the board altogether, their duty only requiring them to cause
a fair appraisal to be made. They are a board of officers-to
act in all cases while they continue in office, and their eligi-
bility and qualifications will be presumed from the fact of
their election and their acting as such officers, and can-not
be questioned in a collateral proceeding. *Patterson* v. *Miller,*
2 Met. (Ky.,) 493 ; *Stokes* v. *Kirkpatrick,* 1 id., 138 ; *Plym-
outh* v. *Painter,* 17 Conn., 585, 592 ; Ang. & Ames on Corp.,
§§ 139, 140, 287.

PARK, J. In making public improvements damages result
to some individuals and benefits are conferred upon others as a
necessary consequence. Public necessity requires the laying
out of a highway. This can not be done without land. Pro-
prietors along the line of the proposed way must furnish it
and damages result in consequence. The highway when con-

structed opens an avenue of public travel, which renders the residences in its vicinity more convenient and agreeable, and consequently more desirable. It brings building lots into market that previously were not available. It builds up a community in a region sparsely inhabited. It shortens the distance to market; and in various other ways enhances the value of adjoining lands. These are the benefits conferred; but such consequences form no part of the object in view in constructing highways. They are laid out to satisfy public necessity. Whether the benefit to one individual will be greater or less than that to another, after paying just compensation for damages to land and the expenses incurred in constructing the road, the public authorities do not stop to inquire. Such benefit is left in the possession of those who are so fortunate as to receive it, owing to the fact that no other person can claim it by any superior title.

These benefits are however, within certain limits prescribed by the charter and ordinances of the city of Hartford, liable to assessment for the purpose of paying damages and expenses in laying out streets within the city; and the petitioners admit this liability, but contend that the commissioners of compensation, and the judge who heard the case upon appeal from them, erred in the principle upon which they proceeded in assessing the damage of the petitioners, inasmuch as they applied the entire benefit received by them to the damage, instead of applying their pro rata share of the benefit. They indeed contend that the assessment of benefits should be made by a distinct board from that which assesses the damage, but obviously it can make no difference whether they are done by separate boards or by one board, so long as the correct principle is adopted in making the estimates.

There are obviously three classes of benefits that may result from the opening of highways;—one, the general benefit which the public as such receive from the opening of a new avenue of travel;—another, the special benefits which those receive who reside or own land upon the new highway, in the more convenient access that is given to their lands;—and another, the strictly local benefit which land as such may

receive from the opening and construction of the road ; an illustration of which would be drainage, if it should happen to be drained by the road and its ditches, or the filling up of low ground by surplus earth that has to be disposed of in lowering some neighboring hill. As to the character of these classes of benefits, and as to their general relation to the road with reference to questions of assessment and damage, there seems to be no serious difference between the claims of the parties. The mere public benefit can not be assessed at all, and is only to be considered with reference to the question how much of the expense of the road shall be paid by general taxation. The merely local benefit is clearly to be deducted from the damage that would be allowed the owner for the part of his land taken for the road, and it goes so far to reduce the actual damage done to him in taking his land. The special benefits, within the limits fixed by the law, are clearly to be considered in assessing benefits ; and if nothing was to be done except to assess the benefits, there would probably be no difference of opinion as to the rule to be adopted in determining the proportions in which the burden of the road should be laid upon the benefits. The sole question is in the case where the same person has received benefits and has also a claim for damages. We will suppose his claim for damages is $1,000, that he gets no local benefit, and that his special benefit is exactly $1,000. Now if he had received only a benefit, and was assessed for that benefit with all the other persons enjoying special benefits, he probably would be assessed only a moderate percentage upon it. We will suppose that assessment would be 10 per cent., so that he would be called on to pay $100 on account of his having received $1,000 of benefit. Now the counsel for the petitioners contend that where the same person has a claim for $1,000 damage he should not have the whole benefit he has received applied to the damage, satisfying it in full and leaving him nothing, but that only the 10 per cent. which he would have been assessed for his benefit, if the benefit had been independently assessed, should be so applied, and the balance, $900, should be paid him for his damage. There is much that is plausible in this claim, and it is not

altogether unreasonable. But the rule has long been settled in this state, not only in practice, but by repeated decisions of this court, that where a land-owner has a claim for damage for land taken, and has received local and special benefits equal to the damage, the value of the benefits shall be set off against the damage and he shall be allowed nothing. It is true that his entire benefit may be exhausted in this application, while the benefits received by his neighbors are assessed only a small percentage, and thus there may be a seeming and perhaps a real inequality, but so long as his benefit equals his damage he can not be said to have suffered by the laying out of the road, and there would be an injustice in compelling others to pay him for damage that really has no existence. Whatever may be said against the reasonableness and justice of this rule, it is too well settled in this state to be shaken, and is one so simple in its application, and that does on the whole so little real injustice, that we should not be disposed to change the rule if we felt perfectly at liberty to do so.

The principal decision upon the subject in this court is in the case of *Nichols* v. *The City of Bridgeport*, 23 Conn., 189, in which also the previous case of *Nicholson* v. *The New York & New Haven R. R. Co.*, 22 Conn., 174, which declares the same principle, is commented on and approved. In the latter case it is held that the special benefits which a land-owner receives from the construction of a public improvement are to be deducted from the damage which would otherwise be allowed him; and in the former case that where such benefit is equal to or greater than the damage sustained, it can not be said that the party has suffered by the improvement, and that he is therefore entitled to no damage for the taking of his land. These decisions fully sustain us in the view we have taken, and the same view is supported by numerous decisions in other states. *Commonwealth* v. *Coombs*, 2 Mass., 492; *Commonwealth* v. *Sessions of Norfolk*, 5 id., 437; *White* v. *County Commissioners of Norfolk*, 2 Cush., 361; *Meacham* v. *Fitchburg R. R. Co.*, 4 id., 291; *Upton* v. *So. Reading Branch R. R. Co.*, 8 id., 600; *Shaw* v. *City of Charles-*

*town*, 2 Gray, 107 ; *Dickinson* v. *Inhabitants of Fitchburg*, 13 id., 546 ; *Livingston* v. *City of New York*, 8 Wend., 85 ; *Betts* v. *City of Williamsburgh*, 15 Barb., 255 ; *The People* v. *City of Brooklyn*, 4 Comst., 420 ; *McMasters* v. *The Commonwealth*, 3 Watts, 292 ; *Symonds* v. *City of Cincinnati*, 14 Ohio S. R., 147 ; *Alexander* v. *City of Baltimore*, 5 Gill, 383 ; *Livermore* v. *Jamaica*, 23 Verm., 361.

It is further claimed, that it does not appear that the commissioners of compensation possessed the qualifications required by the ordinance of the city, or that they had been sworn as the ordinance requires. This objection no doubt would be fatal to the proceedings, unless it appears that commissioners of compensation, when duly appointed, are public officers. They are appointed to hold office during the pleasure of the court of common council, and their duties are to appraise all land damages in cases where land is required for city improvements. It is difficult to see why the ordinance does not constitute them public officers. Suppose the law required that every city and town should annually appoint a person to appraise all land taken for public use within the limits of the city or town ; can any one doubt but that the person so appointed would be as much a public officer as a selectman or grandjuror is ? He acts for the public in all cases within his jurisdiction, whether few or many. He is appointed, not with reference to one case in particular, which was the case in *Judson* v. *The City of Bridgeport*, 25 Conn., 426, and *Nichols* v. *The City of Bridgeport*, but for all cases then existing and future. Such is the case with the commissioners of compensation. Every public officer has a particular class of duties to perform. A selectman can not perform the duties of a grandjuror, neither can a grandjuror perform the duties of a selectman. The duties of each are particularly defined. Why is a grandjuror a public officer ? If he was appointed to make complaint of a particular case, and that only, very clearly he would not be ; but he is appointed to make complaint of all breaches of the law within his jurisdiction that come to his knowledge, and it is this that constitutes him a public officer. So in the case under consideration.

If the commissioners of compensation had been appointed for this particular case only, so that their duties would have begun and ended with the case, then very clearly they would not have been public officers, and the case would come within the principle of the cases cited, and the objection would have been fatal. But like the grandjuror they were appointed for no case in particular, but were appointed to appraise all land damages, in all cases where land should be required for city improvements, during their term of office. What distinction then can be made in the two cases? Both act for the public in a public capacity. Both have jurisdiction of all cases within their particular line of duties that may transpire within the limits of the city and town during their term of office. It certainly can make no difference that the tenure of office of the commissioners is made to depend upon the will of the appointing power, for duration in office is no element that enters into the definition of the term public officer. Neither can it make any difference that they hold office under an ordinance passed by the court of common council, for the charter of the city authorized them to pass the ordinance, and when passed it has all the force of a statute law. A majority of the court are of the opinion that they are public officers.

It appears by the finding that the court of common council appointed the commissioners of compensation to fill the office created by the ordinance. They acted therefore under color of title to the office, and are officers de facto, and their acts are binding between third parties. *Plymouth* v. *Painter*, 17 Conn., 585 ; *Monson* v. *Hunt*, id., 566 ; *Wickwire* v. *The State*, 19 id., 477 ; *Douglass* v. *Wickwire*, id., 489; *Smith* v. *The State*, id., 494; Angell & Ames on Corp., §§ 139, 140, 287 ; *Fowler* v. *Bebee*, 9 Mass., 231; *Moore* v. *Graves*, 3 N. Hamp., 408 ; *Morse* v. *Calley*, 5 id., 223 ; *Cocke* v. *Halsey*, 16 Pet., 85 ; *The People* v. *Bartlett*, 6 Wend., 422. A majority of the court are of the opinion that there is no objection to the proceedings on this ground.

These considerations apply with equal force and effect to the appointment of the highway committee.

Again it is claimed, that it does not appear that the highway committee made any proper attempt to agree with the petitioners in respect to the amount of damages to be paid them. The finding shows that the highway committee, through their chairman, applied to the president and treasurer of the petitioners, in order to agree with them as to the amount of damages to be paid the petitioners, and the president and treasurer refused to act upon the subject, on the ground that they were not authorized ; and that afterwards the chairman, acting for the committee, applied to the commissioners of compensation to appraise the damages. It appears further, that when the commissioners met for the purpose of appraising the damages, the president and treasurer, and one of the trustees of the petitioners, appeared before them and were heard, and that they protested against the laying out of the highway. It appears further, that the committee in 1864 made a report to the court of common council, stating among other proceedings in the case that they had failed to agree with the petitioners as to the amount of damages, and the report was accepted. We think that enough appears in the finding of facts to warrant the committee in calling upon the commissioners of compensation to appraise the damages. *Nichols* v. *The City of Bridgeport,* supra.

We therefore advise the superior court to dissolve the injunction and dismiss the bill.

In this opinion HINMAN, C. J., and BUTLER, J., concurred. McCURDY, J., concurred in the views expressed with regard to the principles upon which damages are to be estimated in such a case, but was of opinion that it should appear upon the face of the proceedings that the commissioners of compensation had the qualifications required by law. DUTTON, J., having tried the case in one of its branches in the court below, did not sit.